**No. 25-901**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

—————————

LORA H. REINBOLD,

*Plaintiff-Appellant,*

*v.*

ALASKA AIRLINES, INC., ET AL.,

*Defendants-Appellees.*

—————————

On Appeal from the United States District Court
for the District of Alaska,
No. 3:23-cv-00087-MMS

Before the Honorable Matthew M. Scoble
United States Magistrate Judge

—————————

## BRIEF FOR APPELLEES

—————————

RICHARD G. GROTCH, ESQ. (SBN 127713)
**JETSTREAM LEGAL APC**
80 Cabrillo Highway North
Suite Q-325
Half Moon Bay, CA 94019
Tel. (415) 961-1691

Attorneys for Defendants-Appellees

## No. 25-901

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

LORA H. REINBOLD,

*Plaintiff-Appellant,*

*v.*

ALASKA AIRLINES, INC., ET AL.,

*Defendants-Appellees.*

On Appeal from the United States District Court for the District of Alaska, No. 3:23-cv-00087-MMS

Before the Honorable Matthew M. Scoble United States Magistrate Judge

## BRIEF FOR APPELLEES

## CORPORATE DISCLOSURE STATEMENT
## FRAP Rule 26.1

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure, Defendant-Appellee Alaska Airlines, Inc. ("Alaska"), states as follows for its Corporate Disclosure Statement:

Alaska Air Group, Inc., a publicly held company, is the parent company of Alaska and owns 100% of its stock.

# TABLE OF CONTENTS

I. INTRODUCTION .................................................................................. 13

II. STATEMENT OF JURISDICTION ..................................................... 16

III. SUMMARY OF THE ARGUMENT ..................................................... 17

IV. STATEMENT OF THE CASE ............................................................ 18

V. PROCEDURAL POSTURE ................................................................. 24

VI. STANDARDS OF REVIEW ................................................................ 32

VII. LEGAL ARGUMENT .......................................................................... 33

    A. Preliminary Discussion .............................................................. 33

    B. The Proposed TAC Failed to State Claims
        for Which Relief Could be Granted ........................................... 34

        1. "Breach Duty of Care for Failure to
            Accommodate & Negligence" ............................................ 35

        2. Reinbold's Second Cause of Action Could
            Not be Amended Because Defendants Are
            Not State Actors ................................................................. 39

            a. Section 1983 ............................................................. 39

            b. Sections 1985 and 1986 ........................................... 43

        3. The Third and Fourth Causes of Action Failed
            to State Claims for Defamation and IIED,
            Respectively ........................................................................ 50

    a.  Defamation ............................................................. 50

    b.  IIED ........................................................................ 53

   4.  The Cause of Action Invoking Emergency Use
     Authorization was Appropriately Dismissed
     With Prejudice and Could Not be Amended ................... 57

 C. Reinbold's Repeated and Flagrant Failure to Adhere
   to the Court's Rules and Orders .............................................. 57

   1.  Public Interest in Expeditious Resolution
     of Litigation ................................................................... 62

   2.  Court's Need to Manage its Docket ................................ 63

   3.  Risk of Prejudice to Defendants ..................................... 63

   4.  Public Policy of Deciding Matters on
     Their Merits ................................................................... 64

   5.  Availability of Less Drastic Alternatives ....................... 64

 D. Other Issues Raised by Reinbold .............................................. 65

   1.  Rule 46 Objections .......................................................... 65

   2.  Reassignment to Magistrate Judge Scoble ..................... 68

VIII.  CONCLUSION ................................................................................. 73

# TABLE OF AUTHORITIES

## Federal Cases

*A.E. ex rel. Hernandez v. Cty. of Tulare*
666 F.3d 631 (9th Cir. 2012) ............................................................. 32

*Abadi v. Am. Airlines, Inc.*
No. 23-cv-4033 (LJL), 2024 U.S. Dist. LEXIS 59889
(S.D.N.Y. Mar. 29, 2024) ............................................................. 37-38

*Allen v. Bayer Corp.*
460 F.3d 1217 (9th Cir. 2006) ........................................................... 64

*Allen v. Beverly Hills*
911 F.2d 367 (9th Cir. 1990) ............................................................. 32

*Am. Mfrs. Mut. Ins. Co. v. Sullivan*
526 U.S. 40 (1999) ............................................................................. 40

*Anderson v. Woodcreek Venture Ltd.*
351 F.3d 911 (9th Cir. 2003) .............................................. 32-33, 70

*Ascon Props., Inc. v. Mobil Oil Co.*
866 F.2d 1149 (9th Cir. 1989) ........................................................... 32

*Ashker v. Newsom*
968 F.3d 975 (9th Cir. 2020) ............................................................. 69

*Azocar v. Delta Air Lines, Inc.*
562 F. Supp. 3d 788 (C.D. Cal. 2021) .............................................. 37

*Bacon v. Lavasse*
No. 24-cv-08077-JCS, 2024 U.S. Dist. LEXIS 240877
(N.D. Cal. Dec. 27, 2024) ................................................................. 42

*Barnes v. Sea Haw. Rafting, LLC*
886 F.3d 758 (9th Cir. 2018) ............................................................. 38

*Blum v. Yaretsky,*
457 U.S. 991 (1982) ........................................................................... 40

*Burns v. County of King*
883 F.2d 819 (9th Cir. 1989) ........................................ 44-45

*Caldeira v. Cnty. of Kauai*
866 F.2d 1175 (9th Cir. 1989) ...................................... 47-48

*California v. EPA*
72 F.4th 308 (D.C. Cir. 2023) .......................................... 39

*Cassettari v. Nevada County, Cal.*
824 F.2d 735 (9th Cir. 1987) ............................................ 48

*Caviness v. Horizon Cmty. Learning Ctr., Inc.*
590 F.3d 806 (9th Cir. 2010) ............................................ 40

*Chappel v. Lab. Corp. of Am.*
232 F.3d 719 (9th Cir. 2000) ............................................ 32

*Chasse v. Humphreys*
No. CV-07-189-HU, 2008 U.S. Dist. LEXIS 90139
(D. Or. Nov. 3, 2008) ..................................................... 47

*City of Fresno v. United States*
709 F. Supp. 2d 888 (E.D. Cal. 2010) ............................. 66-67

*Conner v. Kelly*
No. 23-11225, 2024 U.S. App. LEXIS 15541
(5th Cir. June 26, 2024) ................................................. 38

*Coverdell v. Dept. of Social and Health Servs.*
834 F.2d 758 (9th Cir. 1987) ........................................ 44-45

*Ferdik v. Bonzelet*
963 F.2d 1258 (9th Cir. 1992) ..................................... 61, 62

*Foman v. Davis*
371 U.S. 178 (1962) ........................... 27-28, 58-59, 62, 63

*Gaspard v. DEA Task Force*
No. EDCV 15-01802-BRO (KES), 2016 U.S. Dist. LEXIS 59451
(C.D. Cal. Apr. 4, 2016) ................................................. 47

*Gilstrap v. United Air Lines, Inc.*
  709 F.3d 995 (9th Cir. 2013) ....................................................... 36-37

*Great Am. Fed. Sav. & Loan Ass'n v. Novotny*
  442 U.S. 366 (1979) ..................................................................... 49

*Heegel v. Nev. Prop. 1 LLC*
  No. 2:20-cv-00001-CDS-BNW, 2022 U.S. Dist. LEXIS 146833
  (D. Nev. Aug. 10, 2022) ............................................................... 60

*Hernandez v. City of El Monte*
  138 F.3d 393 (9th Cir. 1998) ....................................................... 64

*Horsley v. Kaiser Found. Hosps., Inc.*
  746 F. Supp. 3d 791 (N.D. Cal. 2024) .......................................... 38

*Ibrahim v. Dep't of Homeland Sec.*
  538 F.3d 1250 (9th Cir. 2008) ..................................................... 41

*Karim-Panahi v. Los Angeles Police Dep't*
  839 F.2d 621 (9th Cir. 1988) .................................................. 44, 50

*Kiss v. Best Buy Stores*
  No. 3:22-CV-00281-SB, 2022 WL 17480936
  (D. Or. Dec. 6, 2022) ................................................................... 42

*Lugar v. Edmondson Oil Co.*
  457 U.S. 922 (1982) ..................................................................... 40

*Man-Seok Choe v. Torres*
  525 F.3d 733 (9th Cir. 2008) ....................................................... 33

*Marcus v. CDC & Prevention*
  No. 2:22-cv-02383-SSS-ASx, 2024 U.S. Dist. LEXIS 105515 ............. 48

*Marcus v. CDC*
  No. 2:22-cv-02383-SSS-ASx, 2023 U.S. Dist. LEXIS 30594 .......... 37-38

*McHenry v. Renne*
  84 F.3d 1172 (9th Cir. 1996) ............................................... 60-61, 63

8

*Nat'l Fed'n of the Blind v. United Airlines, Inc.*
813 F.3d 718 (9th Cir. 2016) ................................................................ 37

*Navajo Nation v. Norris*
331 F.3d 1041 (9th Cir. 2003) .............................................................. 67

*Noel v. Am. Airlines*
No. 22-CV-1696 (LTS), 2022 U.S. Dist. LEXIS 78351
(S.D.N.Y. Apr. 29, 2022) ..................................................................... 41

*O'Handley v. Weber*
62 F.4th 1145 (9th Cir. 2023) ......................................................... 40-41

*Pagtalunan v. Galaza*
291 F.3d 639 (9th Cir. 2002) ............................................................... 63

*Pechenuk v. Cnty. of Alameda*
No. 23-cv-04028-SK, 2024 U.S. Dist. LEXIS 27965
(N.D. Cal. Feb. 5, 2024) ................................................................. 48-49

*Perez v. Mortg. Elec. Registration Sys.*
959 F.3d 334 (9th Cir. 2020) ............................................................... 32

*Planned Parenthood of Greater Wash. v. United States HHS*
946 F.3d 1100 (9th Cir. 2020) ......................................................... 71-72

*POM Wonderful LLC v. Coca-Cola Co.*
573 U.S. 102 (2014) ........................................................................... 38

*Post v. Trinity Health-Michigan,*
44 F.4th 572 (6th Cir. 2022) ............................................................... 47

*Quinn v. Robinson*
783 F.2d 776 (9th Cir. 1986) ............................................................... 72

*Rasmussen v. City of Redondo Beach*
2008 U.S. Dist. LEXIS 115466 (C.D. Cal. Aug. 25, 2008) ................... 47

*Roell v. Withrow*
538 U.S. 580 (2003) ........................................................................... 71

*Sanches-Naek v. TAP Port., Inc.*
  260 F. Supp. 3d 185 (D. Conn. 2017) ................................................ 41

*Sch. Dist. No. 1J, Multnomah Cty. v. ACandS, Inc.*
  5 F.3d 1255 (9th Cir. 1993) ............................................................. 32

*Scott v. Ross*
  140 F.3d 1275 (9th Cir. 1998) ......................................................... 44

*Seklecki v. CDC & Prevention*
  635 F. Supp. 3d 15 (D. Mass. 2022) ............................................ 49-50

*Serris v. Chastaine*
  No. 2:22-cv-0434-JAM-CKD PS, 2022 U.S. Dist. LEXIS
  105990 (E.D. Cal. June 13, 2022) ................................................ 49-50

*Sibron v. New York*
  392 U.S. 40 (1968) ......................................................................... 64

*State Dep't of Fish & Game v. Fed. Subsistence Bd.*
  62 F.4th 1177 (9th Cir. 2023) ...................................................... 71-72

*Steshenko v. Albee*
  70 F. Supp. 3d 1002 (N.D. Cal. 2014) .............................................. 46

*Trerice v. Pedersen*
  769 F.2d 1398 (9th Cir. 1985) ......................................................... 50

*United Bhd. of Carpenters & Joiners of Am., Loc. 610,*
  *AFL-CIO v. Scott*
  463 U.S. 825 (1983) ........................................................................ 44

*United States v. Hinkson*
  585 F.3d 1247 (9th Cir. 2009) ......................................................... 32

*United States v. Westlands Water Dist.*
  134 F. Supp. 2d 1111 (E.D. Cal. 2001) ......................................... 66-67

*Washington v. Kijakazi*
  72 F.4th 1029 (9th Cir. 2023) ...................................................... 69-72

*Wilhelm v. Rotman*
  680 F.3d 1113 (9th Cir. 2012) ......................................................70-71

*Williams v. Office of Child Support*
  No. 21-CV-8235 (PAE) (RWL), 2023 U.S. Dist. LEXIS 41740
  (S.D.N.Y. Mar. 3, 2023) ...................................................................40

*Yourish v. Cal. Amplifier*
  191 F.3d 983 (9th Cir. 1999) ............................................................62

**Federal Constitution**

U.S. CONST. art. I, § 1................................................................................39

**Federal Statutes**

5 U.S.C. § 706 .........................................................................................39

21 U.S.C. § 360bbb-3 ................................................................. 35, 38, 57

28 U.S.C. § 1291 .....................................................................................16

28 U.S.C. § 1331 .....................................................................................16

42 U.S.C. § 1983 ........................................................................... 34, 39-43

42 U.S.C. § 1985 ........................................................ 14, 43-44, 49, 50

49 U.S.C. § 41705 ...................................................................................36

**Federal Rules**

Fed Rules App. Proc. R. 4 ......................................................................16

Fed. R. Civ. P. Rule 8 .........................................................................60-61

Fed. R. Civ. P. 12 ...............................................................................24, 26

Fed. R. Civ. P. 15 ...............................................................................25, 59

Fed. R. Civ. P. 46 ...............................................................................65-68

Fed. R. Civ. P. 73 ...................................................................................29

11

**Ninth Circuit Rules**

Cir. Rule 28-2.2 ...................................................................................... 16

**Alaska District Court Local Rules**

Local Civil Rule 15.1 ...........................................................25, 30, 59-60

**Federal Regulations**

14 C.F.R. part 382 ................................................................................ 36

**Alaska State Cases**

*Olivit v. City & Borough of Juneau*
   171 P.3d 1137 (Alaska 2007) ............................................................ 51

*State v. Carpenter*
   171 P.3d 41 (Alaska 2007) ......................................................... 51, 53

**Alaska State Statutes**

Alaska Stat. § 18.80.230 .......................................................... 35, 36, 37

**Other Authorities**

86 Fed. Reg. 7205 (Jan. 21, 2021) ................................................18-19

Defendants-appellees Alaska Airlines, Inc. ("Alaska"), Marilyn Romano, Troy Michael Wuyts Smith, Amber Allen, Alison Reineccius, John R. Mann, Kristen Dilley, Brenda Baynard, and Dorothy Daniels (collectively referred to as "Defendants"), respectfully submit their answer brief as follows.[1]

## I.      INTRODUCTION

Dissatisfied with a decision, in or about April 2021, to preclude her from flying on Alaska Airlines due to noncompliance with "a CDC mask policy" (ER-4-5)[2] as well as "[c]ombative interactions with Alaska [A]irline[s] staff" (SER-190), on April 21, 2023, former Alaska State Senator Lora Reinbold ("Reinbold") sued Alaska Airlines and 15 individuals (ER-35). In the main, Reinbold's case relates to the

---

[1]      The following defendants listed on the Court's docket were dismissed for lack of jurisdiction and that dismissal has not been challenged by the plaintiff-appellant: Diane Birkett Rakow, Jeremy Horn, Kyle Levine, and M. Frias. Defendants Laurel Carmichael and Tim Thompson were never served and did not appear in the district court.

[2]      Reinbold submitted Excerpts of Record ("ER") in a single volume. Because the pages are not presented in a sequentially numbered manner, Defendants cite the page numbers assigned by the Court's Appellate Case Management System. Defendants' Supplemental Excerpts of Record ("SER") are referenced by their Bates numbers.

approximately one-year prohibition against flying with Alaska Airlines and her objections thereto.

When it ruled on the challenges to the then-operative, omnibus, second amended complaint ("SAC") (ER-59-95), the district court dismissed certain causes of action with prejudice[3] and dismissed the remainder without prejudice.[4] ER-94-95. As to the former, the dismissals were without leave to amend because further amendment would be futile. *Id.* at 94. Because of *legal* impediments, including federal preemption and the lack of any private right of action, the claims could not be saved by amendment.

Regarding the claims dismissed without prejudice, the Court did not grant leave to amend. *Id.* at 94-95. However, Reinbold was advised that if she "wishe[d] to amend these claims, she may do so under Federal Rule of

---

[3] Specifically, Reinbold's second, sixth, seventh, eighth, ninth, tenth, twelfth, thirteenth, fourteenth, and fifteenth claims for relief were dismissed with prejudice as was the third cause of action to the extent it purported to state a claim under Section 1983.

[4] These were the third cause of action to the extent Reinbold sought to assert claims under 42 U.S.C. §§ 1985 and 1986, as well as the fourth, fifth, eleventh, and sixteenth causes of action. Duplicative of the second and fifth causes of action, the first cause of action was dismissed on that basis.

Civil Procedure 15." *Id.* The Court also dismissed four of the individual defendants with prejudice for lack of personal jurisdiction over them. *Id.* at 95; *see* n.1, above.

Three months after entry of the dismissal order, Reinbold moved to amend (*id.* at 145-46); with her motion, she submitted a proposed third amended complaint ("TAC") (her fourth version of a complaint) (*id.* at 147-93). Reinbold's submission largely flouted the "37-page order explaining in detail how her second amended complaint was insufficient." *Id.* at 30. Though that order pointed her to the factors the court would consider if she filed a motion to amend (*id.* at 94-95), Reinbold said nothing about them until she belatedly replied to Defendants' opposition to her motion to amend. *See id.* at 145-146; 218-34. Then, she leaned heavily on her *pro se* status and appeals for forbearance.

The putative TAC also disregarded prior dispositive rulings. Reinbold attempted to reprise claims that had been dismissed with prejudice. *Id.* at 15. The proposed TAC materially violated the district court's rules as well. *Id.* at 19. Among other things, it impermissibly incorporated vast swaths of Reinbold's prior pleading (*see id.* at 148, 150-52, 163, 178, 184, 188), including its numerous exhibits (*see id.* at 151).

15

The result was an indistinct, 47-page jumble, supplemented by exhibits that included over 500 pages and approximately 20 videos.

After reviewing the record, including the TAC, the district court rightly concluded that despite having "afforded her every possible leniency and opportunity to make her case" Reinbold had "not cured the deficiencies that proved fatal to her prior complaints. Instead, she ha[d] repackaged her disability discrimination argument in every conceivable way, even though the Court had informed her how it was in error." *Id.* at 15. "[B]ecause she . . . failed to take heed of these directives" the court rightly concluded "that the window for amendment should now close." *Id.* at 30. Reinbold's motion was denied with prejudice. *Id.* This Court should affirm.

## II.  STATEMENT OF JURISDICTION

Alaska Airlines agrees that: the district court had subject matter jurisdiction to enter the challenged order pursuant to 28 U.S.C. § 1331 (Cir. Rule 28-2.2(a)); the order appealed from is final and appealable and this Court has jurisdiction under 28 U.S.C. § 1291 (Cir. Rule 28-2.2(b)). The appeal is timely. Fed Rules App. Proc. R. 4(a)(1)(A) (Cir. Rule 28-2.2(c)).

16

## III.  SUMMARY OF THE ARGUMENT

Construing it charitably, Reinbold's appeal appears limited to an attack on the district court's order that denied her leave to amend her pleading—again—to try to state five causes of action that she included in her proposed TAC. Two of them had already been dismissed with prejudice.

In the main, Reinbold points to two ways she reckons the district court abused its broad discretion. *First*, she claims the court did not apply the less stringent pleading standard applicable to unrepresented litigants like her. *Second*, she faults the court for purportedly not exercising liberality in permitting the requested amendment, particularly given her pro se status.

In each respect, Reinbold is wrong. The court employed the appropriate, forgiving standards. But it nevertheless concluded that Reinbold (1) failed to state legally actionable claims and (2) would be unable to cure the deficiencies through further amendments.

The record confirms that in terms of being afforded an opportunity to state legally viable claims, Reinbold was provided "every possible leniency and opportunity make her case." ER-15. Unless the court were prepared to

17

disregard set legal principles—and it rightly was not—the *legal* hurdles Reinbold faced could not be surmounted regardless of how freehandedly her pleadings were construed.

Reinbold advances two additional arguments. *First*, she maintains there was some prejudicial error in connection with her "Rule 46 objection" to the order denying leave to amend. *Second*, Reinbold claims "procedural irregularities" attendant to the court's reassignment of the case to a magistrate judge. She argues her implied consent to the reassignment was the product of ignorance and bad information supposedly passed on by an innominate "front desk" district court clerk. Both arguments are baseless.

## IV.   STATEMENT OF THE CASE

During 2020 and 2021, the period that is the focus of this litigation, the nation's airlines continued to provide essential services amid a worldwide pandemic. On January 21, 2021, President Biden issued an Executive Order aimed at allowing "all Americans, including the millions of people employed in the transportation industry, to travel and work safely." Exec. Order No. 13998, 86 *Fed. Reg.* 7205 (Jan. 21, 2021) ("Executive Order") (*see* SER-269-72).

18

The Executive Order directed federal agencies, including the Department of Homeland Security, through the Transportation Security Administration ("TSA"), to coordinate and "immediately take action ... to require masks to be worn in compliance with CDC guidelines" by all persons in or on airports, aircraft, and other forms of public transportation. Executive Order, 86 Fed. Reg. at p.7205 (*see* SER-269).

On January 31, 2021, TSA issued a Security Directive ("Security Directive") to (1) implement the Executive Order and (2) support enforcement of the CDC's Order that mandated masks. *See* Transp. Sec. Admin., SD 1542-21-02, Security Measures—Face Mask Requirements. *See* SER-274-79. Among other things, the Security Directive required, subject to few and limited exceptions, that an "aircraft operator must not board any person who is not wearing a mask." *Id.* at 276.

The Centers for Disease Control and Prevention issued a Federal Transportation Mask Mandate ("FTMM") on February 3, 2021. *Id.* at 281-86. In general, the FTMM required persons to "wear masks over the mouth and nose when traveling on any conveyance (e.g., airplanes, trains, subways, buses, taxis, rideshares, ferries, ships, trolleys, and cable cars)

19

into or within the United States" and "at any transportation hub." *See id.* at 282.

On February 5, 2021, the Department of Transportation ("DOT") issued a *Notice of Enforcement Policy: Accommodation by Carriers of Persons with Disabilities Who Are Unable to Wear or Safely Wear Masks While on Commercial Aircraft*. ER-197-204. It provided specific instructions on how airlines could implement the FTMM consistent with DOT requirements. *Id.* Air carriers, including Alaska Airlines, implemented the FTMM, accordingly.

Reinbold alleged that she flew aboard several Alaska Airlines flights between November 2020 and April 2021, and that she felt targeted (ER-171, 174) and singled out (*id.* at 61, 171, 177) as airline employees sought to gain her compliance with the FTMM. For example, she maintained that, on some flights, Alaska Airlines employees scrutinized whether she was appropriately masked in ways that made her feel singled out. *Id.* at 61, 236.

The proposed TAC (particularly by incorporating the SAC) describes Reinbold's wide-ranging grievances against a variety of individuals.[5] These included Alaska Governor Mike Dunleavy (SER-217); Juneau Police Department officers (*id.* at 177-79); a "lead TSA agent" (*id.* at 177); "a former legislative staffer and IBEW employee" (*id.* at 179); her own then-Chief of staff (*id.* at 196-97); "Canadian Authorities" (*id.* at 198); "local, state, national and international media outlets" (*id.* at 219); and authors of "hostile and hateful emails, letters, and phone calls" to her (*id.* at 180). Mostly, however, the putative TAC targets Alaska Airlines and its employees both named and unnamed as Defendants.

Reinbold complained that on November 15, 2020, following a complaint from another passenger, airline staff inspected her mask before she boarded a connecting flight, and required her to wear a second mask. SER-166-67. She protested allegedly being monitored at a departure gate prior to a December 1, 2020 flight. *Id.* at 170-71. And she objects that on a January 15, 2020 flight; she was required to wear a mask despite what she characterized as her "qualified mask exemption." *Id.* at 171, 174.

---

[5] To the extent Reinbold sought to incorporate text from the SAC, Defendants cite some of that text.

21

Reinbold also whinged about a "mask ordeal at the airport on April 22, 2021." *See id.* at 175-79, 201, 241. When checking-in, there was a dispute about whether Reinbold qualified for exemption from the general masking requirement (*id.* at 175-76); Reinbold took the position that disclosing her medical information amounted to a violation of federal medical privacy laws (*id.* at 176).

At the time, Reinbold made no secret of her antipathy to COVID-related requirements. She characterized mask mandates as "mask tyranny" (SER-168-69) and bristled that the mandates were enforced by "mask bullies"—her pejorative term for flight attendants (*id.*).

Reinbold resented others who sought adherence to the safety protocols, dismissing one online as "a scaredy cat Karen [who] whined loudly and was a Tattle tail [sic]." SER-123. Reinbold regarded a face covering as a "dumb worthless suffocating mask" (*id.*) that "could cause ... more harm than good" (*id.*).

Despite claiming she had a "mask exemption," she never alleged that she showed it to any of the Defendants. Rather, she averred that she "was ***always*** willing to show the mask exemption" (ER-153 (emphasis in original), but "question[ed] the legality and reasoning behind their demand

to submit [her] medical records to Alaska Airlines, to validate [her] legitimate mask exemption…" (*id.* at 154). Reinbold continues to insist "a clear shield would have been a reasonable accommodation" that was "repeatedly denied" to her "when she respectfully requested the[] [accommodation]." AOB at 10. In its Security Directive, TSA expressly advised airlines and their passengers that acceptable "[m]asks do not include face shields." SER-276 n.2.

The day after the "mask ordeal" in Juneau, Reinbold received an email from Alaska Airlines that advised that she was no longer welcome as a guest aboard its flights. *Id.* at 180. Subsequently, the airline's Director of Security told her that this decision was based on her non-compliance with the mask mandate and her combative interactions with airline staff. *Id.* at 186, 190-91. Reinbold protested then—as she does now—that she: (1) complied with the masking requirements (ER-171; AOB at 9-10) and (2) was not given adequate warning (ER-172; AOB at 11). In her pleadings she also complained that she was not afforded a hearing, due process, or a right to "appeal." ER-148, 155; SER-161, 186, 210, 225, 241. The restriction on Reinbold's travel with Alaska Airlines was lifted once the mask mandate ended. ER-62.

As the district court correctly summarized, Reinbold alleged that the travel ban, and the incidents that preceded it, resulted in difficulty traveling from her home in Eagle River to Juneau to attend the state's legislative session, negative media attention, and other injuries. *Id.* at 63.

## V. PROCEDURAL POSTURE

On April 21, 2023, nearly two years after she was advised of the travel restrictions, Reinbold filed her initial complaint. *See id.* at 35. Defendants (Alaska Airlines and eight of its employees who Reinbold sued individually) filed a motion to dismiss the complaint, pursuant to Fed. R. Civ. P. 12(b)(6), on May 30, 2023. *See id.* at 36. The same day, four other airline employees targeted by Reinbold moved to dismiss for lack of personal jurisdiction in Alaska under Fed. R. Civ. P. 12(b)(2). *See id.* and n.1, above.

In filings on June 20, 2023, Reinbold simultaneously opposed the motion to dismiss for failure to state a claim upon which relief can be granted and filed her first motion for leave to amend her complaint. *See id.* at 36. Reinbold filed a second, amended opposition to the motion to dismiss on June 23, 2023 and on June 26, 2023, she filed an opposition to the motion regarding lack of personal jurisdiction. *Id.* Those four employee-

defendants filed their reply to Reinbold's opposition on June 29, 2023. *See id.* at 38. On the same date, Defendants advised that they did not oppose Reinbold's filing of a first amended complaint ("FAC") pursuant to Fed. R. Civ. P. 15(a)(1)(B). *Id.*

Because it was unclear whether the FAC had been filed, on July 5, 2023, Defendants moved to dismiss the FAC. *Id.* On August 9, 2023, with an extension of time to do so, Reinbold opposed the motion to dismiss the FAC. *Id.*

The district court issued a case management order on August 22, 2023, which, among other things, permitted Reinbold to amend her complaint pursuant to Fed. R. Civ. P. 15(a)(1)(B) within 30 days. ER-42-44. In view of Reinbold's self-represented status, the court waived the requirement in the Local Rules that a bracketed or red-lined amended complaint be submitted. *Id.* at 43-44. The court did not, however, waive the provision in the Local Rules that prohibits a proposed amended pleading that incorporates by reference any prior pleading, including exhibits. *See id.* at 43 (citing Local Civil Rule 15.1(a)).

On September 20, 2023, Reinbold filed a second amended complaint ("SAC"). SER-157-263. In it, Reinbold sued everyone named in the prior

pleading. The SAC was replete with repetitive text that was supplemented by more than 400 pages of exhibits and nearly 20 video exhibits. See ER-39 (cataloging Exhibits A through W). The four defendants who previously moved to dismiss for lack of personal jurisdiction did so again on October 5, 2023. *Id.* Defendants moved to dismiss the SAC on the same date. *Id.*

In response, Reinbold filed (1) a written opposition that purported to incorporate the entirety of her opposition to the prior motion to dismiss (*see id.*); (2) a correction to the opposition (*id.*); and (3) 70 days after Defendants filed their reply, a sur-reply that was not contemplated by the rules but allowed by the district court (*id.*).

In an order filed February 12, 2024, the district court granted the motion to dismiss for lack of personal jurisdiction with prejudice. *Id.* at 59-95. The court also granted Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *Id.*

In its detailed order, the court explained the reasons why each of Reinbold's 16 causes of action failed to state a claim upon which relief could be granted. *See id.* As to most of the claims, further amendment was futile. *See* n.3, above. That was not because of imagined illiberality with which the allegations were construed, but because there were legal

impediments. Either (1) there was no private right of action to enforce the claim; (2) the claim was unsustainable against a private party as opposed to a state actor; and/or (3) the state law claim was preempted by federal law. Because of those insurmountable obstacles, those claims were dismissed with prejudice. *See* ER-94.

The remaining claims were dismissed, but without prejudice. *See* n.4, above. The court explained that Reinbold could request leave to amend those claims by motion. *See* ER-94-95. Significantly, in its order, the court explained the shortcomings that had doomed the claims in the first instance and did so in that way suggested how Reinbold might *try* to amend her pleading. *See generally* ER-64-95.

The court also explicitly stated that if Reinbold did file a motion seeking leave to amend, when ruling on the motion, the court would consider certain specified issues. *Id.* at 94-95. The court explained that these would include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of amendment, etc." *Id.* (quoting

27

*Foman v. Davis*, 371 U.S. 178, 182 (1962)) (hereinafter, the "*Foman* Factors*"*).

On March 5, 2024, Reinbold filed a document in which she expressed her intention to file a motion for leave to amend (ER-141-42) and on April 16, 2024, she filed the motion itself (*id.* at 145-46). In it, she sought leave to file the TAC (*id.* at 147-206). A second affidavit in support of the motion was filed by Reinbold on April 23, 2024. *Id.* at 207-09.

On April 29, 2024, Defendants opposed the motion for leave to file the TAC (SER-26-71) and Reinbold filed her reply to that opposition on May 13, 2024 (ER-218-34). There were myriad problems with the motion and proposed amended pleading. Reinbold acknowledged the *Foman* Factors only in her reply even though she had been expressly admonished to do so if she moved to amend (*id.* at ER-94-95). And when she did, belatedly, she mostly sought absolution because she was self-represented.

Upon the resignation of Judge Joshua M. Kindred, the case was reassigned to Chief Judge Sharon L. Gleason on July 9, 2024. SER-19-20. On July 22, 2024, the district court issued an order that advised the

parties that the case would be reassigned to United States Magistrate Judge Matthew M. Scoble for all purposes.[6] *Id.* at 17-18.

The order also explained, with unmistakable clarity, that the reassignment would occur "unless one or more party submits a declination of consent to the magistrate judge within fourteen (14) days of the date of th[e] order." *Id.* at 17 (citing Fed. R. Civ. P. 73). The order further detailed precisely what a party needed to do if the party did not consent to Judge Scoble presiding in the case. *Id.* at 17-18. And the order carefully cautioned, in several different ways, that a failure to complete and timely submit the declination of consent form would be considered as consent to the reassignment and waiver of the right to have a district judge hear the case. *Id.*

On August 7, 2024, Reinbold filed a document entitled "Notice To the Court: Case Summary." ER-235-41. In it, she acknowledged that "[o]n July 22, 2024, Judge Gleason issued an order regarding the intent to reassign the case to a United States Magistrate Judge Matthew M. Scoble." *Id.* at 240. Far from withholding her consent or otherwise objecting, Reinbold

---

[6] Given the centrality of this order in the context of Reinbold's challenge to the reassignment to the magistrate judge, her pretermission to include it among the Excerpts of Record she submitted is odd.

expressed her "hope[ that] our new judge will look at these issues with a keen eye, and re-evaluate the claims, justly." *Id.* at 238. Two days later, the clerk served notice that because no declination of consent had been timely submitted, the case was reassigned to Magistrate Judge Scoble. SER-15-16.

On November 26, 2024, Reinbold's motion for leave to file a third amended complaint was denied. ER-14-30. The parties were ordered to meet and confer about whether any issues remained for the Court's consideration and submit a joint status report by December 10, 2024. *Id.* at 30. On that date, a joint status report was filed. SER-10-14. Mostly, Reinbold protested that she needed more time to evaluate the November 26 order and had been "unfamiliar with the local rules."[7] *Id.* at 11-12. Defendants reported that "in view of the November 26, 2024 order and the orders that preceded it, nothing remain[ed] to be done by the Court save

---

[7]  Though Reinbold was coy about when she became acquainted with the court's local rules, in fact, the district court directed her to them in the August 22, 2023 case management order and specifically referenced Local Civil Rule 15.1. *See* ER-43. That was four months after the case was filed (not "well into the process" as claimed) and a year and three months before the joint status report was filed.

for the entry of judgment in favor of the defendants and against the plaintiff." *Id.* at 12.

The next day, the Court entered an order (1) expressing agreement that "no matters remain for the Court to address"; (2) denying Reinbold's request for leave to brief her objections to the November 26 order; (3) dismissing the case with prejudice; and (4) directing the clerk to prepare a judgment. *Id.* at 8. In accordance with that order, Judgment was entered on December 11, 2024. *Id.* at 7. On December 16, 2024, Reinbold filed "Objections to Order" with respect to the November 26, 2024 order that, among other things, denied further leave to amend. ER-8-13.

Construing the December 16, 2024 submission as a motion for reconsideration, on January 8, 2025, the district court denied the motion with prejudice. ER-5-7. The court reiterated that "Ms. Reinbold has been given the opportunity to completely present her case and that she will not be able to establish that she is entitled to the requested relief with further briefing." *Id.* at 7. The court explained that the order "does not prevent Ms. Reinbold from appealing to the Ninth Circuit Court of Appeals" (*id.*), which she did on February 7, 2025, when she filed her notice of appeal (*id.* at 4).

## VI.   STANDARDS OF REVIEW

The district court's decision to deny leave to amend is reviewed for an abuse of discretion. *Perez v. Mortg. Elec. Registration Sys.*, 959 F.3d 334, 340 (9th Cir. 2020) (citing *A.E. ex rel. Hernandez v. Cty. of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012)). "A district court acts within its discretion to deny leave to amend when amendment would be futile, when it would cause undue prejudice to the defendant, or when amendment is sought in bad faith." *Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 725-26 (9th Cir. 2000). "The district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." *Allen v. Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990) (quoting *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989)).

The Court reviews a district court's denial of a motion for reconsideration for an abuse of discretion, *see Sch. Dist. No. 1J, Multnomah Cty. v. ACandS, Inc.*, 5 F.3d 1255, 1262 (9th Cir. 1993), but reviews de novo any legal conclusions on which the denial was based, *see United States v. Hinkson*, 585 F.3d 1247, 1261-62 (9th Cir. 2009) (*en banc*).

Questions regarding the assignment of cases to magistrate judges and the scope of magistrate judge authority present legal questions that

32

are reviewed de novo. *See Anderson v. Woodcreek Venture Ltd.*, 351 F.3d 911, 915 (9th Cir. 2003). Factual findings made by a magistrate judge are reviewed for clear error. *See Man-Seok Choe v. Torres*, 525 F.3d 733, 741 (9th Cir. 2008).

## VII. LEGAL ARGUMENT

### A. Preliminary Discussion

The district court pointed to "two overarching reasons" it did "not believe that further amendment [was] warranted." ER-15. "First, Ms. Reinbold's repeated and flagrant failure to adhere to this District's Local Civil Rules, the prejudice this would cause to the Defendants, and this Court's interest in preventing further delay convinces this Court that this amendment would not be in the interests of justice." *Id.*

"Second, and independently, Ms. Reinbold's proposed third amended complaint not only attempts to relitigate matters dismissed with prejudice, but also fails to state a claim upon which relief can be granted." *Id.*

Each of these independent bases for denying further leave to amend was well justified and amply supported by the record. Reinbold does not show otherwise. Addressing the twin bases for denying further leave to amend in reverse order, Defendants begin with the second basis identified

33

by the district court. That was the indisputable reality that the Court evaluated Reinbold's claims with all appropriate deference and liberality; it concluded, nonetheless, that she had not stated and could not state legally actionable claims despite her arguments to the contrary.

Defendants then show that the Court rightly concluded that the timing, format, and substance of Reinbold's proposed TAC defied the court's prior substantive and procedural rulings as well as the local rules of court. Particularly with its extensive (though forbidden) incorporation by reference, and the mass of exhibits that included newspaper clippings and unauthenticated emails and videos, the proposed TAC amounted to an incomprehensible hodgepodge. Even if Defendants had any interest in filing an answer to it—and to be sure they did not—that would have been a virtual impossibility given the labyrinthian pleading presented.

## B. The Proposed TAC Failed to State Claims for Which Relief Could be Granted

In the TAC, Reinbold proposed to assert five causes of action: (1) "Breach Duty of Care for Failure to Accommodate & Negligence" (ER-151-62); (2) "Violation of 42 U.S.C. § 1983 Deprivation of Rights, 42 USC 1985, and 1986 Conspiracy to Violate Civil Rights & the Fourteenth Amendment" (*id.* at 162-78); (3) defamation (*id.* at 178-84); (4) intentional

infliction of emotional distress ("IIED") (*id.* at 184-88); and (5) "Increased Public Health and Safety to Passengers & Potential Fidiciary [sic] Liability [sic] for Mandating EUA 'Emergency Use Authorization' Laws & Informed Consent Laws" (*id.* at 188-91). The district court correctly found that these were not legally sustainable claims.

### 1.   "Breach Duty of Care for Failure to Accommodate & Negligence"

It is entirely unclear what actual legal claim Reinbold contemplated by her first cause of action. Nothing she said in her motion to amend, or that she now says on appeal, provides clarification. In support of the claim, Reinbold variously invoked an Alaska antidiscrimination statute (Alaska Stat. § 18.80.230); a federal statute within the Federal Food, Drug, and Cosmetics Act (21 U.S.C. § 360bbb-3) ("FDCA"); and perhaps state and federal "Mask Directives," too.

The district court correctly construed the claim as one of the myriad ways Reinbold had "repackaged her disability discrimination argument . . . even though the Court had informed her how it was in error." ER-15.

As an example of one of the ways the Court charitably interpreted her indecipherable claims, the Court *assumed* "that Alaska Airlines operates a public accommodation under state law and that it had a duty to

35

provide an adequate and navigable medical exception process that would be applicable to Ms. Reinbold." *Id.* at 24. That assumption was made despite the court's justifiable belief that the premise was false, "and in fact, . . [was] an improbable application of the law." *Id.*

Even if generously interpreted in that way, the Court fittingly concluded that a claim under state law, Alaska Stat. § 18.80.230, would be preempted by federal law. *Id.* at 24-25. It would be impliedly preempted by the Air Carrier Access Act, 49 U.S.C. § 41705 ("ACAA"). "An amendment to the [Federal Aviation Act], the ACAA 'provide[d] that prohibitions of discrimination against handicapped individuals shall apply to air carriers.'" *Gilstrap v. United Air Lines, Inc.*, 709 F.3d 995, 1000 (9th Cir. 2013) (quoting Pub. L. No. 99-435, § 2(a), 100 Stat. 1080).

As the district court recognized, the ACAA empowered and directed the Secretary of Transportation to issue the necessary regulations to effectuate the federal government's interest in preventing disability-based discrimination in air travel.[8] ER-24-25. "In doing so, 'the ACAA and its implementing regulations preempt state and territorial *standards of care* with respect to the circumstances under which airlines must provide

---

[8] These are promulgated in 14 C.F.R. part 382.

assistance to passengers with disabilities in moving through the airport.'"
*Id.* at 25 (quoting *Gilstrap*, 709 F.3d at 1010 (emphasis in original)).

This Court has recognized that the ACAA is to be broadly interpreted "to generally include 'airlines' interactions with their customers who have disabilities'" (*Nat'l Fed'n of the Blind v. United Airlines, Inc.*, 813 F.3d 718, 739 (9th Cir. 2016) (quoting *Gilstrap*, 709 F.3d at 1005 n.14), "whether on an airplane, in an airport, at a kiosk, or otherwise" (*id.*).

Because the ACAA, including its robust administrative enforcement mechanisms, would govern Reinbold's discrimination claims, her putative claim under a state antidiscrimination law was impliedly preempted by the ACAA and therefore legally unsustainable. *See, e.g., id.* at 740; *see also, Azocar v. Delta Air Lines, Inc.*, 562 F. Supp. 3d 788, 793-94 (C.D. Cal. 2021) (holding claims under California's antidiscrimination laws impliedly field preempted by the ACAA). Claims like Reinbold's—animated by COVID-related face covering requirements, brought pursuant to state antidiscrimination statutes analogous to AS 18.80.230—have similarly been found to be preempted by the ACAA. *See Marcus v. CDC*, No. 2:22-cv-02383-SSS-ASx, 2023 U.S. Dist. LEXIS 30594, at *25-26 (C.D. Cal. Feb.

37

21, 2023); *Abadi v. Am. Airlines, Inc.*, No. 23-cv-4033 (LJL), 2024 U.S. Dist. LEXIS 59889, at *114-17 (S.D.N.Y. Mar. 29, 2024).

To the extent that Reinbold sought to rely on federal law, 21 U.S.C. § 360bbb-3, she was not—and could not have been—any more successful. *First*, the seventh cause of action in the previous SAC, which invoked this statute, was dismissed with prejudice. ER-85-86, 94. Giving Reinbold's reassertion of the dispositively dismissed claim the most charitable gloss, that it was included to preserve the issue for appeal, the repleading was unnecessary. *Barnes v. Sea Haw. Rafting, LLC*, 886 F.3d 758, 772 (9th Cir. 2018) (claims dismissed with prejudice without leave to amend need not be re-pled in a subsequent amended complaint to preserve them for appeal.)

*Second*, this statute governs the Food and Drug Administration, not private companies or individuals such as Defendants. *See Conner v. Kelly*, No. 23-11225, 2024 U.S. App. LEXIS 15541, at *8 (5th Cir. June 26, 2024).

*Third*, even if the statute applied to the Defendants—and it did not— as the district court explained, no private right of action exists to enforce it. ER-85; *see Horsley v. Kaiser Found. Hosps., Inc.*, 746 F. Supp. 3d 791, 804 (N.D. Cal. 2024) (citing *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 109 (2014)).

38

Finally, it is unclear what role, if any at all, "President Biden['s] & Governor Dunleavy['s] Mask Directives" are meant to play in this putative claim. ER-151, 160. It is doubtful the presidential order can be considered "law" within the meaning of the Constitution or the APA and there is no reason to believe the order created any free-standing private rights of enforcement. *See California v. EPA*, 72 F.4th 308, 318 (D.C. Cir. 2023) (citing U.S. CONST. art. I, § 1; 5 U.S.C. § 706). Even if it were "law" that created a private right of action, any action would lie against the executive agencies not the Defendants. To the extent that it would have had any conceivable application, Reinbold did not show that she had any legally redressable rights under a state law mandate issued by the Governor of Alaska, particularly with respect to the Defendants.

> **2. Reinbold's Second Cause of Action Could Not be Amended Because Defendants Are Not State Actors**
>
> **a. Section 1983**

In the second cause of action that she proposed to assert in her TAC, Reinbold aimed to state claims under 42 U.S.C. §§ 1983, 1985, and 1986. ER-162-78. The Section 1983 claim had already been dismissed with prejudice in the earlier order. *Id.* at 94. Since it was dismissed without

leave to amend, Reinbold's attempt to reprise it in the TAC was, at best, unnecessary (*Barnes*, 886 F.3d at 772) and, at worst, "objectively unreasonable" and legally baseless. *See Williams v. Office of Child Support*, No. 21-CV-8235 (PAE) (RWL), 2023 U.S. Dist. LEXIS 41740, at *9-10 (S.D.N.Y. Mar. 3, 2023).

When it ruled on the previous version of the complaint, the SAC, the district court correctly observed that "[i]n order to recover under § 1983 for conduct by the defendant, a plaintiff must show 'that the conduct allegedly causing the deprivation of a federal right be fairly attributable to the State.'" ER-75 (citing *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 812 (9th Cir. 2010) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)).

After all, Section 1983 "excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful.'" *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982)).

The district court then applied this Court's test to analyze whether the Defendants—who indisputably were private parties—could somehow be considered "state actors." ER-75-77 (quoting *O'Handley v. Weber*, 62

40

F.4th 1145, 1156 (9th Cir. 2023) (citing *Lugar*, 457 U.S. 922)). As this Court has explained, only in exceptional cases will a private entity be treated as a state actor for constitutional purposes. *Id.* at 1155-56.

This is not one of the "exceptional cases." The district court agreed that the SAC pertained, in the main, to Alaska Airlines' enforcement of *federal*, not state, policies and that Reinbold "cannot allege a § 1983 cause of action based on these policies."[9] ER-76. Nevertheless, "because Ms. Reinbold is self-represented, th[e] Court [gave] her the benefit of the doubt" and went on to consider whether the "state-initiated mask mandate . . . may have provided a state-law opening for a § 1983 claim." *Id.* at 76-77. Reinbold argued then, as she does now, that "the airlines' unwavering compliance with government directives and regulations" and "adherence to

---

[9]     Courts, including this one, repeatedly hold that airlines and airline personnel are not state actors subject to suit under Section 1983. *See, e.g., Ibrahim v. Dep't of Homeland Sec.*, 538 F.3d 1250, 1257-58 (9th Cir. 2008) ("Nor does section 1983 give Ibrahim a cause of action against United Air Lines and its employee, David Nevins, because she hasn't alleged that either party was acting under color of California or local law"); *Noel v. Am. Airlines*, No. 22-CV-1696 (LTS), 2022 U.S. Dist. LEXIS 78351, at *4 n.1 (S.D.N.Y. Apr. 29, 2022) ("airline companies — are private parties and private parties are generally not liable under Section 1983"); *Sanches-Naek v. TAP Port., Inc.*, 260 F. Supp. 3d 185, 191 n.1 (D. Conn. 2017) ("Section 1983 claims also cannot be brought against TAP because, as an airline, TAP is not a state actor").

and enforcement of state decrees and orders" "firmly establish the airlines as agents of the government." SER-94, 95.

Reinbold never identified what she meant by the "state mask mandate." More importantly, when she sought leave to further amend, in terms of the purportedly "extensive coordination between the airlines and government officials" (ER-76-77), she relied on unpled assertions that she hoped to be able to support through eventual discovery (*id.*).

Regardless of how "aggressively" Reinbold imagines Defendants enforced the unspecified "state mask mandate" (AOB at 2), "Courts in the Ninth Circuit have found that businesses and their employees who enforce a mask mandate *under state law* are not state actors." *Bacon v. Lavasse*, No. 24-cv-08077-JCS, 2024 U.S. Dist. LEXIS 240877, at *12 (N.D. Cal. Dec. 27, 2024) (emphasis added) (citing *Kiss v. Best Buy Stores*, No. 3:22-CV-00281-SB, 2022 WL 17480936, at *3 (D. Or. Dec. 6, 2022), *aff'd sub nom. Kiss v. Best Buy Stores, Ltd. P'ship*, No. 23-35004, 2023 U.S. App. LEXIS 32909, 2023 WL 8621972 (9th Cir. Dec. 13, 2023) (holding that Best Buy and Best Buy managers who required the plaintiff to wear a mask as a Best Buy employee were not state actors for purposes of 42 U.S.C. § 1983)).

In the final analysis, the district court was faced with a pleading that was "devoid of any allegations that support a close nexus between the State of Alaska and Alaska Airline Defendants." ER-77. Reinbold offered little more than an aspiration that she might find some evidence of a connection through future discovery. *Id.* And since the pleading was focused on Defendants' enforcement of *federal* policies [sic], the district court correctly dismissed the Section 1983 claim with prejudice. *Id.* at 76. That was a legally supported, amply justified ruling. Nothing Reinbold argues shows otherwise.

### b.　Sections 1985 and 1986

When the district court ruled on the inadequacy of the SAC, it considered Reinbold's claims under Section 1985 and Section 1986 and dismissed both, albeit without prejudice. In doing so, the court rightly explained that "Section 1985 provides a cause of action for an individual injured by a conspiracy to interfere with civil rights" (*id.* at 77) and Reinbold had "not pled allegations that allows this Court to infer the existence of a conspiracy" (*id.*).

The court did not stop there, however. It went on to identify precisely what Reinbold needed to allege if she wished to try to state a claim under

43

Section 1985. The Court painstakingly explained that to state a claim under 42 U.S.C. § 1985(3), "a plaintiff must allege four elements: '(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.'" ER-77-78 (quoting *United Bhd. of Carpenters & Joiners of Am., Loc. 610, AFL-CIO v. Scott*, 463 U.S. 825, 828-29 (1983)).

The court further counseled that while Reinbold "need not include allegations that show the existence of an express agreement," she nevertheless "must plead conduct that allows the inference of a conspiracy." ER-78 (citing *Scott v. Ross*, 140 F.3d 1275, 1284 (9th Cir. 1998)). She was cautioned that the "mere allegation of conspiracy without factual specificity is insufficient." *Id.* (quoting *Karim-Panahi v. Los Angeles Police Dep't*, 839 F.2d 621, 626 (9th Cir. 1988)).

To satisfy the first element, "the plaintiff must state specific facts to support the existence of the claimed conspiracy." *Burns v. County of King*, 883 F.2d 819, 821 (9th Cir. 1989) (citing *Coverdell v. Dept. of Social and*

44

*Health Servs.*, 834 F.2d 758, 769 (9th Cir. 1987)). In the proposed TAC, however, Reinbold failed to allege additional facts from which a conspiracy could be plausibly inferred under Section 1985(3).

Instead, Reinbold harkened back to the SAC previously invalidated by the district court and offered conclusory and/or speculative averments. In terms of references to her prior pleading, she referred readers generally to certain parts of the SAC, including paragraphs 38-46 (ER-171); 47-50 (*id.*); and "paragraphs 51" (*id.*); to exhibits to the SAC, including "critical exhibit Y" (*id.* at 172); "exhibits F, K, O, P, Q, W, X" (*id.* at 175); to "new exhibit X thumb drive video" (*id.* at 173);[10] and even to material Reinbold was awaiting in response to a FOIA request ("Exhibit A6 Pending FOIA request") (*id.* at 170).

Her conclusory and tentative allegations about a so-called "conspiracy," are exemplified by her statements that "[e]vidence of the conspiracy includes but is not limited to the incident on November 15, 2020, with Laurel Carmichael (concerted with Dorothy Daniels, Johnny

---

[10] Reinbold claimed "[t]he videos *appear to be* demonstrating a well-coordinated conspired effort to create a mask ordeal to justify a flight ban, to the detriment of Plaintiffs civil rights, her reputation and her health." ER-174 (emphasis added).

Mann and Kristen Dilley) paragraphs 38-46 in the SAC. Additionally, please read the incident on November 30, 2020-December 1, 2020, in paragraphs 47-50. Such documentation and testimony from potential witnesses, including Alaska Airlines employees Dee & Sheri will be provided in discovery." ER-177-78.

Between factually barren, conclusory assertions, references to the SAC, vague representations about, and characterizations of, exhibits, and aspirations of what discovery might reveal, it is impossible to discern basic facts about the so-called "conspiracy." These important details, left undefined, include: (1) a specific agreement; (2) the scope of the conspiracy; (3) the identities of the alleged co-conspirators and their respective roles in the conspiracy; (4) how the conspiracy operated; and (5) when the conspiracy operated. *See, e.g., Steshenko v. Albee*, 70 F. Supp. 3d 1002, 1015-16 (N.D. Cal. 2014). The district court's denial of leave to further amend was fundamentally founded on Reinbold's (repeated and indisputable) failure to allege a conspiracy. ER-25-26.

However, there were additional, insurmountable impediments to this claim. *First,* although Reinbold did not identify the characteristic that supposedly entitled her to equal protection under Section 1985, if her

46

proposed pleading were construed liberally, one might imagine she would rely on her claimed status as "a person with a documented physical or mental disability that precludes her from wearing a face mask." ER-153.

But this Court has not held that Section 1985 protects against *disability*-based discrimination. Other courts have held that it does not apply to that class (*Post v. Trinity Health-Michigan*, 44 F.4th 572, 580 (6th Cir. 2022)), including district courts in this circuit. *See Gaspard v. DEA Task Force*, No. EDCV 15-01802-BRO (KES), 2016 U.S. Dist. LEXIS 59451, at \*22-23 (C.D. Cal. Apr. 4, 2016) (citing *Rasmussen v. City of Redondo Beach*, 2008 U.S. Dist. LEXIS 115466, \*27-28 n.6 (C.D. Cal. Aug. 25, 2008)); *see also, Chasse v. Humphreys*, No. CV-07-189-HU, 2008 U.S. Dist. LEXIS 90139, at \*13 (D. Or. Nov. 3, 2008) (disabled persons are not a suspect class or quasi-suspect class for equal protection claims). In denying Reinbold's motion to amend, the district court did not need to rely on this limitation although it did agree "that it is the most probable reading" of the statute. ER-26.

*Second,* because Section 1985(3) does not create its own independent cause of action, to plead a Section 1985(3) claim, a plaintiff must first successfully plead a violation of a substantive civil rights statute. "[T]he

47

absence of a section 1983 deprivation of rights precludes a section 1985 conspiracy claim predicated on the same allegations." *Caldeira v. Cnty. of Kauai*, 866 F.2d 1175, 1182 (9th Cir. 1989) (citing *Cassettari v. Nevada County, Cal.*, 824 F.2d 735, 739 (9th Cir. 1987)); *see also Marcus v. CDC & Prevention*, No. 2:22-cv-02383-SSS-ASx, 2024 U.S. Dist. LEXIS 105515, at *9 (C.D. Cal. June 12, 2024) (dismissing a Section 1985 claim on that basis). The proposed TAC comingled the various allegations in support of Reinbold's civil rights claims. As such, all were based on the same inadequate averments.

*Third*, to the extent that Reinbold seemed to point to "coordination" among Alaska Airlines employees—and she frequently did[11]—an actionable conspiracy claim was precluded by the intracorporate conspiracy doctrine; individual members of the same legal entity cannot form a "conspiracy" when acting in the scope of their employment. *See*

---

[11] *See, e.g.*, ER-171 (referring to "targeted conspired effort by numerous Alaska Airlines employees"); ER-175 ("Troy and Alisons' acts were an overt act in furtherance of the conspiracy" (both were Alaska Airlines employees); and ER-177 (referencing an "incident on November 15, 2020, with Laurel Carmichael (concerted with Dorothy Daniels, Johnny Mann and Kristen Dilley)"—all Alaska Airlines employees).

*Pechenuk v. Cnty. of Alameda*, No. 23-cv-04028-SK, 2024 U.S. Dist. LEXIS 27965, at *13 (N.D. Cal. Feb. 5, 2024).

*Fourth*, charitably construing Reinbold's argument to be "that there was a conspiracy because the safety precautions ordered by the federal and state governments were in error and that Alaska Airlines complied with these regulatory requirements," the Court duly concluded that regulatory compliance does not amount to conspiracy with the government. ER-26.

And *fifth*, a disability-based discrimination claim under Section 1985(3) was unsustainable because the ACAA already provides administrative regulations and procedures to address disability discrimination complaints against airlines. *See Seklecki v. CDC & Prevention*, 635 F. Supp. 3d 15, 22 (D. Mass. 2022).[12]

"[W]hen a statute creates a right and provides a remedial structure, a plaintiff cannot use section 1985(3) to vindicate the same right." *Id.*; *see*

---

[12] *Seklecki* looked to "an analogous context" in which "the Supreme Court has held that '§ 1985(3) may not be invoked to redress violations of Title VII'" because if a plaintiff were allowed to assert a Title VII violation through Section 1985(3), then he could avoid the 'detailed and specific provisions of the law' and 'bypass the administrative process, which plays such a crucial role in the scheme established by Congress in Title VII.'" *Id.* (quoting *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 375-78 (1979)).

*also, Serris v. Chastaine*, No. 2:22-cv-0434-JAM-CKD PS, 2022 U.S. Dist. LEXIS 105990, at \*15-16 (E.D. Cal. June 13, 2022) ("plaintiff cannot assert civil rights claims premised on alleged violations of Title II of the ADA because the ADA has its own comprehensive remedial schemes for such violations.") As in *Seklecki*, Reinbold's Section 1985 claim is foreclosed by the ACAA's "detailed, comprehensive, national regulation, based on Federal statute."

Finally, "[t]o state a claim under § 1986, a plaintiff must also state a valid claim for relief under § 1985." ER-77 (citing *Trerice v. Pedersen*, 769 F.2d 1398, 1403 (9th Cir. 1985)). The district court initially dismissed the Section 1986 claim in the SAC (*id.*) and subsequently denied further leave to amend on that basis (*id.* at 27) (citing *Karim-Panahi, supra*, 839 F.2d at 626).

### 3. The Third and Fourth Causes of Action Failed to State Claims for Defamation and IIED, Respectively

#### a. Defamation

The district court dismissed the defamation claim in the SAC because Reinbold failed adequately to allege that the Defendants made any defamatory statement, much less statements made with actual malice.

50

ER-78-81. As with the other causes of action dismissed without prejudice, the court explained to Reinbold what she needed to allege in an effort to state a defamation claim under Alaska law. *Id.*

Specifically, Reinbold would need to "plausibly allege: '(1) a false and defamatory statement; (2) unprivileged publication to a third party; (3) fault amounting at least to negligence; and (4) either per se actionability or special damages.'" *Id.* at 79 (citing *State v. Carpenter*, 171 P.3d 41, 51 (Alaska 2007). The court elaborated that "because she was a public figure at the time of the alleged defamation, Ms. Reinbold must allege 'actual malice'" (*id.* citing *Carpenter*, 171 P.3d at 55) and explained that "'[a]ctual malice exists when it is proved that the defamatory statement was made with knowledge that it was false or with a reckless disregard of whether it was false or not.'" *Id.* (quoting *Olivit v. City & Borough of Juneau*, 171 P.3d 1137, 1143 (Alaska 2007) (internal quotations omitted.))

Largely disregarding the court's instructions, the proposed TAC continued to allege legal conclusions, not facts. To further confuse matters, as discussed above, the proposed TAC sought to incorporate text from Reinbold's other pleadings, including the SAC, a variety of exhibits to the SAC, and a belated sur-reply filed in support of denial of Defendants'

motion to dismiss the SAC. Since the SAC failed to allege sufficient facts to state an actionable defamation claim, it is unclear why Reinbold would imagine they would suffice in the proposed TAC. Again, the invitation to "See exhibits F, K, O, P, Q, W, X" was not at all helpful. ER-180, 183, 184. Nor were citations to inapposite case law. *See, e.g., id.* at 181-82.

Most notably, in the portion of the proposed TAC that purported to identify the "Substance of the Defamatory Statements," Reinbold provided no substantive facts at all. ER-178-79. Instead, she referred to an entirely unspecified "false account of Lora's disability/mask exemption and Alaska Airlines lack of accommodation" (*id.* at 179); "false statements" (*id.*); and an unidentified "distorted and false narrative" (*id.*). Similarly, references to purported states of mind of unidentified purveyors of these "accounts," statements," and/or "narratives" were equally conclusory. *Id.*

Reinbold simply said that "the substance of the defamation"—which, again, was not identified—was made "[w]ith recklessness and malice." *Id.* Whatever the "account of Lora's disability/mask exemption and Alaska Airlines lack of accommodation," Reinbold claims it was an "intentional[] misrepresent[ation]" and "false." *Id.* Likewise, the unspecified "narrative" was characterized, in a conclusory fashion, as "distorted and false." *Id.*

52

As with the SAC, in the putative TAC, Reinbold failed to provide sufficient detail as to any defamatory statement, including who made it, when, or to whom.

Even now, Reinbold points to nothing specific. Instead, she protests that "the complaint had specific statement made publicly by defendant with a reckless disregard for the truth, when they stated to the FAA that lawmaker (Senator Reinbold) 'refused to wear a mask on their aircraft.'" AOB at 41. Reinbold's reference is entirely unclear. So, too, are these issues: (1) whether *she* was identified as the "lawmaker"; or (2) why this statement, attributed to "defendant" (whoever that was) was defamatory, much less made with actual malice.

### b. IIED

When it dismissed Reinbold's IIED claim, the district court again described precisely what was needed to state such a claim. "[A] plaintiff must allege 'that there was "extreme and outrageous conduct" that intentionally or recklessly inflicted severe emotional distress.'" ER-89 (quoting *Carpenter*, 171 P.3d at 58). The court also explained that "[c]onduct gives rise to an IIED claim only if it is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of

53

decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id.* at 89-90. And the court went on to state that, "[b]y contrast, 'mere insults, indignities, threats, annoyances, petty oppressions or other trivialities cannot form the basis of an IIED claim" and that "[e]ven conduct that []is 'characterized by malice' is insufficient." *Id.* at 90.

As with the defamation claim, the putative IIED cause of action relied on the incorporation of the insufficient allegations in her SAC as well as general references to various exhibits. *See id.* at 184, 185, 187. Insisting she had "sufficiently alleged extreme and outrageous conduct by Alaska Airlines" (*id.* at 184), and with little or no *factual* support, Reinbold mostly parroted terms of art associated with IIED claims. She *concluded* that the airline's actions: "were intentional or reckless" (*id.* at 184); amounted "to a reckless indifference to the Plaintiff's well articulated request for reasonable accommodations" (*id.* at 185); and showed "blatant disregard for the potential impact of their actions (*id.* at 188).

Consistently missing—then and now—are allegations of *fact* showing that the Defendants intended or recklessly disregarded the possibility of causing emotional distress.

In the first instance, the court rightly disregarded Reinbold's conclusory and speculative assertion that Defendants' "conduct was extreme and outrageous since it appeared to be driven by an intent to subject [her] to public ridicule and humiliation . . ." *Id.* at 90. Likewise, it did not consider the allegedly "hostile and hateful messages" that Reinbold claimed she received since they were not—and could not be— attributed to the Defendants. *Id.*

Rather, the court focused on the core question: whether the conduct alleged was "extreme." *Id.* The allegedly extreme conduct was Defendants' "denial of an accommodation related to Alaska Airlines' masking requirement" which, as the court correctly noted, "occurred after she objected to providing … Defendants with her written [mask] exemption." *Id.* at 90-91. The Court was entirely correct in concluding that "[g]iven this context and the fact that Alaska Airline Defendants were legally obligated to enforce the FTMM, their conduct cannot be said to have been extreme." *Id.* at 91.

The contours of Reinbold's challenge to the court's ruling that disallowed the IIED cause of action are unclear. Futility was established

55

by the fact that despite four attempts, Reinbold had proven unable to allege an actionable claim for IIED. *See id.* at 28-29.

Mostly, she faults the district court for "fail[ing] to properly evaluate the previous exhibits" or "the new evidence" without (1) specifying what previous exhibits or new evidence were at issue or (2) explaining how she believes the materials were improperly evaluated. AOB at 42. Reinbold also criticizes the court for declining to consider Exhibits 2-17.[13] *Id.* Without explanation or citation to legal authority, Reinbold characterizes this as the application of a "rogue standard" that "violated the rules of evidence" and says it "also defies precedent." *Id.*

With respect to Exhibits 2-17, none were in any way authenticated. Some could perhaps have been the appropriate subject of judicial notice had it been requested—but it was not. Most importantly, however, they were of marginal if any relevance.

There was no error in denying leave to amend the cause of action for IIED and beyond vague assertions about "exhibits" and "evidence," Reinbold fails to show otherwise.

---

[13] It is not even clear which exhibits these are. Presumably, but not unquestionably, they are "A1" through "A17" which were appended to the motion for leave to file the TAC.

56

### 4. The Cause of Action Invoking Emergency Use Authorization was Appropriately Dismissed With Prejudice and Could Not be Amended

It does not *seem* that Reinbold challenges the Court's rulings that found no basis for a claim under 21 U.S.C. § 360bbb-3. That statute pertains to emergency authorization for medical products.

The claim, alleged in the SAC, was properly dismissed with prejudice. ER-85-86, 94. As with the Section 1983 claim, however, Reinbold did not take no for an answer; doubled down; and returned with the same claim in the putative TAC. She insisted Alaska Airlines and the district court were wrong and that the statute "does provide for a private right of action." *Id.* at 188. She also seemingly tried, impermissibly, to revive her "prior informed consent cause of action [which] was similarly dismissed with prejudice." *See* ER-23.

There was—and is—no permissible basis for these claims and the court correctly declined to consider them as potentially viable. Nothing Reinbold argues is to the contrary.

### C. Reinbold's Repeated and Flagrant Failure to Adhere to the Court's Rules and Orders

As explained above, apart from the undeniable fact that Reinbold failed to demonstrate that she could proffer allegations that would

57

withstand a motion to dismiss—having availed herself of multiple opportunities to do so—the Court also concluded that leave to further amend was not appropriate given Reinbold's defiance of the court's rules and orders. ER-15, 19-22.

Again, when the court advised Reinbold that if she wished to amend her claims, "she may do so under Federal Rule of Civil Procedure 15," it also articulated the specific factors that would be considered if and when it ruled on any such motion. *Id.* at 94-95. Reinbold was specifically admonished that "[u]pon a motion for leave to amend, the Court will consider 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of amendment, etc." *Id.* (quoting *Foman*, 371 U.S. at 182.

In her motion, Reinbold failed to address *any* of the pertinent *Foman* Factors—much less all of them. Only in her belated reply did she begin to grapple with these issues and then mostly sought leniency. On appeal, she argues "the Magistrate Judge improperly relied on *Foman v. Davis*" as opposed to simply construing everything—"all facts and evidence, in the

58

light most favorable to [her as] the non-moving party." AOB at 29-30. (In this argument, Reinbold neglects that she (1) also cited *Foman* (for other purposes) and (2) was the moving party who sought leave to amend).

Her pretermission to address the *Foman* Factors now is baffling since the district court found those considerations provided an independent but further basis for denying leave to amend.

In addition to Fed. R. Civ. P. 15, the district court's local rules governed Reinbold's effort to request leave to file the TAC. Local Rule 15.1(a) clearly mandates, in part, that "[t]he proposed amended pleading must not incorporate by reference any prior pleading, including exhibits." In the district court's August 22, 2023 case management order, Reinbold was specifically instructed that "[i]n the District of Alaska, a plaintiff "moving to amend a pleading must attach the proposed amended pleading as an exhibit to the motion" and "[a] plaintiff may not amend a complaint on motion *or by reference*." ER-43 (emphasis added).

Reinbold disregarded the court's prohibition against incorporation by reference—about which she had been specifically reminded—and went her own way instead. In her putative TAC, Reinbold *extensively* incorporated material, including extensive portions of the SAC which were found

59

insufficient. To make matters worse, Reinbold incorporated all 23 of the exhibits she had appended to the SAC and added some additional exhibits too. *See id.* at 151. The challenges created by the forbidden incorporation by reference ballooned as paragraphs incorporated from the SAC themselves incorporated *other* large parts of the SAC. Solely by way of example, in paragraph 166, Reinbold incorporated everything alleged in the preceding 56 pages. *See* SER-214.

Honoring Local Civil Rule 15.1(a) more in the breach than the observance, Reinbold produced a pleading that had much more than a "[t]rivial defect[] that fail[s] to conform to procedural rules [that] might be excusable." *See Heegel v. Nev. Prop. 1 LLC*, No. 2:20-cv-00001-CDS-BNW, 2022 U.S. Dist. LEXIS 146833, at *5 (D. Nev. Aug. 10, 2022) (striking a summary judgment reply brief artificially designed to evade the Court's page limitation).

If the SAC was a farrago—and surely it was—her proposed TAC was a "[p]rolix, confusing complaint … that imposed unfair burdens on litigants and judges." *McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996) (cleaned up). As this Court has explained, "[t]he judge wastes half a day in chambers preparing the 'short and plain statement' which Rule 8

60

obligated plaintiff[] to submit. He then must manage the litigation without knowing what claims are made against whom. This leads to discovery disputes and lengthy trials, prejudicing litigants in other case[s] who follow the rules, as well as defendants in the case in which the prolix pleading is filed." *Id.*

While the district court characterized this requirement as "technical," it also correctly regarded it as "material" in this case. ER-19. To the extent the proposed TAC incorporated the SAC, it was massive, amounting to some 637 pages; in addition, there were at least 3 CDs and a thumb drive that Reinbold sought to incorporate.

This Court weighs five factors when considering whether a district court abused its discretion in "dismiss[ing] a case for failure to comply with a court order": "(1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic alternatives." *Ferdik v. Bonzelet*, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (citations and internal quotation marks omitted).

While preferred, "it is not required that the district court make explicit findings in order to show that it has considered these factors" and this Court "may review the record independently to determine if the district court has abused its discretion." *Yourish v. Cal. Amplifier*, 191 F.3d 983, 990 (9th Cir. 1999) (quoting *Ferdik*, 963 F.2d at 1261). The Court "'may affirm a dismissal where at least four factors support dismissal, . . . or where at least three factors "strongly" support dismissal.'" *Id.* (quoting *Ferdik*, 963 F.2d at 1263).

Even if Reinbold's defiance of the Court's orders and local rules were the sole basis for denying leave to further amend her complaint—and, as detailed above, it was not—the court did not abuse its discretion.

### 1. Public Interest in Expeditious Resolution of Litigation

The court considered the public interest in expeditious resolution of cases albeit in the context of addressing the *Foman* Factors. As such, it considered that the events that animated the case "occurred in 2021 and that the federal litigation has been ongoing since April of 2023." ER-20. It also observed that Reinbold's motion to amend was filed 64 days after the order granting the motion to dismiss the SAC. *Id.* The court was convinced that its "interest in preventing further delay" associated with further

62

amendment of the pleadings "would not be in the interests of justice." *Id.* at 15. "The public's interest in expeditious resolution of litigation always favors dismissal," *Pagtalunan v. Galaza*, 291 F.3d 639, 642 (9th Cir. 2002), and it surely did in this case.

### 2.    Court's Need to Manage its Docket

"The trial judge is in the best position to determine whether the delay in a particular case interferes with docket management and the public interest." *Id.* Dealing with rambling, disorganized submissions such as the TAC imposes unfair burdens on litigants and judges and deflects the court from litigants in other cases who follow the rules. *See* ER-19 (citing *McHenry, supra,* 84 F.3d at 1179). This factor also weighed in favor of denying leave to amend and dismissal of the case.

### 3.    Risk of Prejudice to Defendants

The impact on the defendants of allowing further amendments was also considered by the court in the context of the *Foman* Factors. Defendants provided evidence of their mounting litigation costs and the prejudice that further amendments would cause. *See* ER-20-21. While Reinbold recounted the burdens she felt as a defendant in an unrelated state court case, over a period of a couple of months (*id.* at 228),

Defendants pointed to the burdens imposed on them, particularly the many individuals she sued (SER-44).

The protracted nature of the litigation increases the risk that witnesses' memories will fade and evidence will become stale to the inevitable prejudice of the Defendants. *Pagtalunan*, 291 F.3d at 643 (citing *Sibron v. New York*, 392 U.S. 40, 57 (1968)). Therefore, the third factor strongly weighed in favor of dismissal too.

### 4. Public Policy of Deciding Matters on Their Merits

Generally weighing against dismissal, *Hernandez v. City of El Monte*, 138 F.3d 393, 399 (9th Cir. 1998), the public policy favoring disposition of cases on their merits lends little support to a party whose responsibility it is to move a case toward disposition on the merits but whose conduct impedes progress in that direction. *See Allen v. Bayer Corp. (In re : Phenylpropanolamine (PPA) Prods. Liab. Litig.)*, 460 F.3d 1217, 1228 (9th Cir. 2006). In the context of this case, for Reinbold this factor is at best neutral.

### 5. Availability of Less Drastic Alternatives

The court availed itself of multiple less drastic alternatives. These included advising Reinbold what would be considered if she moved for

leave to amend. Nevertheless, the court found there had been a "repeated failure to cure deficiencies by amendments previously allowed." ER-20. The court's prohibition against pleadings that incorporated matters by reference was specifically called to her attention (*id.* at 43), yet she "improperly incorporate[d] portions of her second amended complaint." *Id.* at 28. Acknowledging her status as an unrepresented litigant, the court had explained the substantive deficiencies that would need to be cured in any amended complaint. Since Reinbold disregarded all counsel, this final factor also weighed in favor of dismissal. There was no abuse of discretion.

### D. Other Issues Raised by Reinbold

In addition to the findings regarding her demonstrated inability to state legally actionable claims and her defiance of court orders and rules, Reinbold has raised two additional issues on appeal. One pertains to a submission proffered as Rule 46 objections. The other relates to reassignment to a magistrate judge for all purposes. Both issues lack merit.

#### 1. Rule 46 Objections

Reinbold maintains that a filing she submitted as objections, pursuant to Fed. R. Civ. P. 46, was "improperly mischaracterized" as a

motion for reconsideration. AOB at 17. She contends that by doing so, the district court applied the wrong legal standard and "prejudice[ed] her ability to obtain proper review of the Magistrate's earlier rulings." *Id.* This, she says, "represents a fundamental procedural error, that tainted the entire proceedings before the Magistrate." *Id.*

It is unclear what Reinbold would have had the district court do in response to her Rule 46 objections or how her rights to review were in any way affected much less compromised. The court noted that her December 16, 2024 submission had been "styled as objections." ER-6. Mostly, Reinbold expressed "disagree[ment] with the Court's findings of law as to many of her claims," said "that the Court should have considered a less drastic measure," and "argued for leniency given her pro se status." *Id.*

Since she argued the district court had abused its discretion by not granting leave to amend liberally and by finding that amendment would be futile, it seemed she was seeking reconsideration of the earlier order that denied leave to amend.

But "[a] party seeking reconsideration must show more than a disagreement with the Court's decision, and recapitulation of the cases and arguments considered by the court before rendering its original

66

decision fails to carry the moving party's burden." *City of Fresno v. United States*, 709 F. Supp. 2d 888, 916 (E.D. Cal. 2010) (quoting *United States v. Westlands Water Dist.,* 134 F. Supp. 2d 1111, 1131 (E.D. Cal. 2001)). Reconsideration may be appropriate in the face of new evidence, an intervening change in the law, or as necessary to prevent manifest injustice. *See Navajo Nation v. Norris*, 331 F.3d 1041, 1046 (9th Cir. 2003). But none of those circumstances existed here. Whether to grant reconsideration is committed to the sound discretion of the court. *Id.*

If anything, by interpreting the submission as a motion for reconsideration—as opposed to objections for the record—and overlooking the procedural limitations in terms of a page limit and deadline (ER-6), Reinbold was *advantaged* by the court's interpretation. In the end, however, her submission amounted to an expression of her disagreement with the district court and a repetition of her prior arguments—precisely the things that do not justify reconsideration.

The court found that since Reinhold had already been "given the opportunity to completely present her case . . . she will not be able to establish that she is entitled to the requested relief with further briefing."

67

ER-7. Neither construing her objections as a motion for reconsideration nor the court's ultimate conclusion amounted to an abuse of discretion.

### 2. Reassignment to Magistrate Judge Scoble

There is no question: Reinbold *received* the district court's "Order Re Intent to Reassign to a United States Magistrate Judge and Declination of Consent Form" filed July 22, 2024. SER-17-18. Her "Notice To the Court: Case Summary" filed August 7, 2024, confirms this. There, she acknowledged that "[o]n July 22, 2024, Judge Gleason issued an order regarding the intent to reassign the case to a United States Magistrate Judge Matthew M. Scoble." ER-240. Notably, Reinbold also concedes she "did not formally object to the reassignment at the time." AOB at 17-18.

Instead, Reinbold now claims (for the first time) that her consent was "due to lack of understanding regarding both the reassignment's significance and the procedures for objecting to magistrate jurisdiction." *Id.* The detailed contents of the order itself belie Reinbold's protestations of ignorance.[14] *See* SER-17-18.

---

[14] As shown below, the order clearly explained the consent/ declination process and the implications of an exercise of the two options. Moreover, the district court promulgated and published its "Local Magistrate Judge Rules of the United States District Court for the District of Alaska." Local

It is also untrue that the effectiveness of her consent is open to doubt because, in her words, "the record does not clearly establish that proper consent procedures were followed here." AOB at 38. On the contrary, the record reflects that the appropriate procedures were indeed followed. *See* SER-17-18.

This Court considered similar challenges to magistrate judge jurisdiction in *Washington v. Kijakazi*, 72 F.4th 1029 (9th Cir. 2023).[15] In that case, one that also involved an unrepresented plaintiff, the primary question was "whether consent to a magistrate judge's authority to exercise the full civil authority of the district court [could] be inferred from the failure of the litigant to return a declination-of-consent form issued under the general orders and local rules" of the district court. *Id.* at 1033. This Court concluded that the plaintiff "knowingly and voluntarily consented to magistrate judge jurisdiction by failing to return the form

---

Magistrate Judge Rule 2 specifically addresses the issue of "Authority of Magistrate Judges."

[15]    It is unclear whether Reinbold challenges the magistrate judge's lawful exercise of jurisdiction, upon which this Court's jurisdiction would depend. *See Ashker v. Newsom*, 968 F.3d 975, 980-81 (9th Cir. 2020). Her "Jurisdictional Statement" suggests she does not. Even if she did, however, upon de novo review this Court would find there was a lawful exercise of jurisdiction by the magistrate judge.

that notified him of his rights and by thereafter proceeding with the litigation before the magistrate judge." *Id.*

In *Washington*, this court was mindful that "[c]onsent is the 'touchstone of magistrate judge jurisdiction'" and that consent may be express or implied. *Id.* at 1036 (quoting *Anderson, supra*, 351 F.3d at 914). The circumstances in this case closely largely mirror those in *Washington* and compel the same result concerning effective consent to magistrate jurisdiction.

Both this case and *Washington* involved notices that advised the parties of the consequences of consent and declination. In both, the voluntary nature of consent was explained. In each case, the litigants were told about the availability of, and intended assignment to, a district judge if consent were declined. In the two cases, the parties were admonished that "[e]ach party will be deemed to have knowingly and voluntarily consented to proceed before [the] Magistrate Judge" if the declination was not signed and returned to the court by the stated deadline.

Not only was the text of the declination of consent form substantively the same in this case and in *Washington*, but the language of the notice in both cases was "substantively similar to consent forms in other cases

where [this Court] held that a pro se plaintiff impliedly consented to magistrate judge jurisdiction. *Washington*, 72 F.4th at 1037 (citing *Wilhelm v. Rotman*, 680 F.3d 1113, 1117-18 (9th Cir. 2012)).

Not only did Reinbold impliedly consent to magistrate jurisdiction, but she also submitted her "objections" (or motion for reconsideration) to the magistrate judge for resolution. Indeed, she did so with the "hope[]" that the "new judge will look at these issues with a keen eye, and reevaluate the claims, justly." ER-238.

It is only now that Reinbold disavows her consent to jurisdiction. It is that "luxury of waiting for the outcome before denying the magistrate judge's authority[,]" that this Court has equated with "the type of gamesmanship the [Supreme] Court warned against." *Washington*, 72 F.4th at 1037 (citing *Roell v. Withrow*, 538 U.S. 580, 590 (2003)).

In this case, it is even more fitting to characterize Reinbold's conduct as gamesmanship given that she never objected while in the district court. That also means this issue was not decided by the trial court and there is no reason for this Court to consider it now.[16]

---

[16] "In general, an appellate court does not decide issues that the trial court did not decide." *State Dep't of Fish & Game v. Fed. Subsistence Bd.*,

In this context, as in others, Reinbold leans on her status as an unrepresented litigant. But as this Court explained in *Washington*, this circuit has "never held that pro se litigants are incapable of knowingly or voluntarily consenting to magistrate judge jurisdiction." *Id.* at 1039. Here, as in *Washington*, the record amply supports the conclusion "that the process used in this case was sufficient" to find a knowing and voluntary consent to magistrate judge jurisdiction. *See* SER-17-18.

Finally, there is no merit to Reinbold's suggestion that she was somehow misled by an unnamed "front office clerk" who "assured her that 'Judge Gleason would always have oversight,' if Reinbold did not object to the re-assignment." AOB at 14.

*First*, the details of any such back-channel communications are entirely unknown to the Defendants. *Second*, Reinbold knew or should have known that "employees of the Clerk's Office and judicial staff are

---

62 F.4th 1177, 1183 (9th Cir. 2023) (quoting *Planned Parenthood of Greater Wash. v. United States HHS*, 946 F.3d 1100, 1110 (9th Cir. 2020)). While this rule is not inflexible, and the appellate court has discretion to address a claim in the first instance if the question is a purely legal one and the record has been fully developed prior to appeal, *see Quinn v. Robinson*, 783 F.2d 776, 814 (9th Cir. 1986), this is not such a claim.

72

prohibited from giving legal advice to any litigant." "The *Pro Se* Handbook"

made available by the district court says so.

## VIII. CONCLUSION

The judgment of the district court should be affirmed.

Dated: May 23, 2025                    Respectfully submitted,

/s/ *Richard G. Grotch*

_____

Richard G. Grotch
***Jetstream Legal APC***
80 Cabrillo Highway North
Suite Q-325
Half Moon Bay, CA 94019

Attorneys for Defendants-Appellees

Alaska Airlines, Inc., Marilyn Romano,
Troy Michael Wuyts Smith, Amber Allen,
Alison Reineccius, John R. Mann,
Kristen Dilley, Brenda Baynard, and
Dorothy Daniels

73

## CERTIFICATE OF COMPLIANCE

## [FRAP, Rule 32(a)(7)]

I certify that this brief complies with Fed. R. App. P. 29(d) and 32(a)(7)(B). It was prepared using Microsoft Word for Office 365, Century Schoolbook 14-point proportional font, and contains 12,289 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

Dated: May 23, 2025                                    /s/ *Richard G. Grotch*

_____

Richard G. Grotch

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT
## Form 15. Certificate of Service for Electronic Filing

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form15instructions.pdf*

**9th Cir. Case Number(s)** | 25-901

I hereby certify that I electronically filed the foregoing/attached document(s) on this date with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit using the Appellate Electronic Filing system.

**Service on Case Participants Who Are Registered for Electronic Filing:**

☐ I certify that I served the foregoing/attached document(s) via email to all registered case participants on this date because it is a sealed filing or is submitted as an original petition or other original proceeding and therefore cannot be served via the Appellate Electronic Filing system.

**Service on Case Participants Who Are <u>NOT</u> Registered for Electronic Filing:**

☒ I certify that I served the foregoing/attached document(s) on this date by hand delivery, mail, third party commercial carrier for delivery within 3 calendar days, or, having obtained prior consent, by email to the following unregistered case participants *(list each name and mailing/email address)*:

Lora H. Reinbold
17217 Yellowstone Drive
Eagle River, AK 99577

**Description of Document(s)** *(required for all documents)*:

Brief for Appellees

Supplemental Excerpts of Record

**Signature** | /s/ Richard G. Grotch | **Date** | 05/23/2025

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 15** | *Rev. 12/01/2018*