# No. 25-901

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

LORA H. REINBOLD,

*Plaintiff-Appellant*, v.

ALASKA AIRLINES, INC., ET AL.,

*Defendants-Appellees.*

---

On Appeal from the United States District Court for the District of Alaska,
No. 3:23-cv-00087-MMS

Before the Honorable Matthew M. Scoble United States Magistrate Judge

**REPLY BRIEF FOR APPELLANT**

**Lora H. Reinbold**
*Pro Se Plaintiff-Appellant*
17217 Yellowstone Drive
Eagle River, Alaska 99577
aklora@outlook.com

1

# No. 25-901

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

**LORA H. REINBOLD,**
*Plaintiff-Appellant,*

v.

**ALASKA AIRLINES, INC., et al.,**
*Defendants-Appellees.*

**Case No.: 25-00901**
**On Appeal from the United States District Court for the District of Alaska**
**District Court Case No. 3:23-cv-00087-MMS**

**APPELLANT'S REPLY BRIEF**

**Lora H. Reinbold**
*Pro Se Plaintiff-Appellant*
17217 Yellowstone Drive
Eagle River, Alaska 99577
aklora@outlook.com

2

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to Federal Rule of Appellate Procedure, Appellant Lora H. Reinbold is an individual and not a corporation.

## TABLE OF CONTENTS

**CORPORATE DISCLOSURE STATEMENT** ........................................ **3**

**TABLE OF AUTHORITIES** ........................................................**6**

**I. INTRODUCTION** ..................................................................**9**

**II. STANDARD OF REVIEW** ................................................... **12**

**III. DISTRICT COURT COMMITTED REVERSIBLE ERROR BY**..**14**
**EXCLUDING SELF-AUTHENTICATING GOVERNMENT DOCUMENTS**

**A**. Appellees Cannot Excuse the District Court's Failure to Accept Presumptively Authentic Government Documents ............................................**15**

**B**. The Disregarded or Improperly Weighed Documents Were Essential to Proving State Action and Other Claims, Rendering Dismissal Improper ..................**16**

**C**. The Magistrate's *Sua Sponte* Speculation About Authenticity at the Pleading Stage Was Clear Error ..................................................................**18**

**D**. No Federal Circuit Has Upheld Such Treatment of Unchallenged Self-Authenticating Documents at the Pleading Stage .......................................**19**

**E**. The Advisory Committee Notes Support Appellant's Position on Self-Authentication .....................................................................**19**

**IV. THE DISTRICT COURT ERRED AS A MATTER OF LAW IN**
**DETERMINING ALASKA AIRLINES WAS NOT A STATE ACTOR**..**20**

**A**. The Joint Action Test Under *Dennis v. Sparks* Is Satisfied, Contrary to Appellees' Assertions ...................................................................**20**

**B**. Enforcement of State/Federal Mandates on Government Property Establishes Nexus & Entwinement………………………………………………**24**

**V. THE DISTRICT COURT VIOLATED FUNDAMENTAL MOTION TO**
**DISMISS STANDARDS** ........................................................**25**

**A**. The Court Failed to Accept Well-Pleaded Facts and Supporting Exhibits as True, Contrary to Appellees' Assertions ...................................................**26**

**B**. The Court Failed to Construe Facts in the Light Most Favorable to Appellant, Despite Appellees' Claim of "Appropriate Deference." ...............................**28**

**C**. The Court Improperly Made Credibility Determinations .......................**30**

**VI. THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING LEAVE TO AMEND** ........................................................................................**29**

**A**. This Was Appellant's First Meaningful Opportunity to Amend After Receiving Specific Guidance from the Court ...............................................................**31**

**B**. The *Foman* Factors, When Properly Applied to Appellant as a *Pro Se* Litigant, Strongly Support Allowing Amendment .......................................................**31**

**C**. Ninth Circuit Precedent Requires Liberal Amendment, Especially for *Pro Se* Litigants ...............................................................................................**33**

**VII. THE DISTRICT COURT COMMITTED PROCEDURAL ERRORS REQUIRING REVERSAL** ........................................................................**33**

**A**. The Magistrate Judge Improperly Mischaracterized Appellant's Rule 46 Objection as a Motion for Reconsideration, Applying an Incorrect and Prejudicial Standard ..............................................................................................**34**

**B**. The Magistrate Judge Abused Basic Fairness in Denying a *Pro Se* Litigant a Reasonable Extension Under the Circumstances ........................................**35**

**VIII. CONCLUSION** ................................................................................**35**

**STATEMENT OF RELATED CASES** ...................................................**39**

**CERTIFICATE OF COMPLIANCE** .....................................................**39**

**CERTIFICATE OF SERVICE** ..............................................................**40**

**TABLE OF AUTHORITIES**

**Cases**

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970) .............................................**23**

*A.E. ex rel. Hernandez v. Cty. of Tulare*, 666 F.3d 631 (9th Cir. 2012) ...............**13**

*Allen v. Beverly Hills*, 911 F.2d 367 (9th Cir. 1990) ...........................................**13**

*Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40 (1999) ....................................**23**

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..........................................................**25, 26**

*Bacon v. Lavasse*, No. 24-cv-08077-JCS, 2024 U.S. Dist. LEXIS 240877 (N.D. Cal. Dec. 27, 2024) ....................................................................................**21**

*Bateman v. U.S. Postal Service*, 231 F.3d 1220 (9th Cir. 2000) .......................**33**

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) .......................................**26**

*Brentwood Academy v. Tennessee Secondary Sch. Athletic Ass'n*, 531 U.S. 288 (2001) ..........................................................................................**20, 24, 25**

*Burton v. Wilmington Parking Authority*, 365 U.S. 715 (1961) ....................**24, 36**

*Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806 (9th Cir. 2010)…**12**

*Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034 (9th Cir. 2011).....**12**

*Chappel v. Lab. Corp. of Am.*, 232 F.3d 719 (9th Cir. 2000) ..............................**13**

*Daniels-Hall v. National Educ. Ass'n*, 629 F.3d 992 (9th Cir. 2010) ................…**26**

*Dennis v. Sparks*, 449 U.S. 24 (1980) .........................………… ..**17, 22, 36**

*Foman v. Davis*, 371 U.S. 178 (1962) ........................................................**13, 31**

*Haines v. Kerner*, 404 U.S. 519 (1972) .......................................................**13, 37**

6

*Jacobsen v. Filler*, 790 F.2d 1362 (9th Cir. 1986) .............................................**33**

*Kiss v. Best Buy Stores*, No. 3:22-CV-00281-SB, 2022 WL 17480936 (D. Or. Dec. 6, 2022) .........................................................................................................**21**

*Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000) (en banc) ................................ **32**

*Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982) ......................................**24, 25**

*Man-Seok Choe v. Torres*, 525 F.3d 733 (9th Cir. 2008) ...................................**15**

*Perez v. Mortg. Elec. Registration Sys.*, 959 F.3d 334 (9th Cir. 2020) ...............**13**

*Tsao v. Desert Palace, Inc.*, 698 F.3d 1128 (9th Cir. 2012) ................................**23**

*United States v. Price*, 383 U.S. 787 (1966) ......................................................**23**

*West v. Atkins*, 487 U.S. 42 (1988) ...................................................................**23**

**Constitutional Provisions**

U.S. Const. amend. I and XIV....................................................................... **20, 38**

**Statutes**

42 U.S.C. § 1983 .........................................................**12, 19, 20, 23, 25**

**Rules**

District of Alaska Local Civil Rule 7.3(h)(1) .................................................**33, 34**

Federal Rule of Appellate Procedure 26.1 .......................................................**3**

Federal Rule of Appellate Procedure 32(a)(5) .................................................**39**

Federal Rule of Appellate Procedure 32(a)(6) .................................................**39**

Federal Rule of Appellate Procedure 32(a)(7)(B) .............................................**39**

Federal Rule of Appellate Procedure  ...............................................................**39**

Federal Rule of Civil Procedure 15(a)(2) ........................................................**31**

Federal Rule of Civil Procedure 46 ...........................................**11, 14, 32, 33, 34**

Federal Rule of Evidence 902 ...........................**10, 14, 15, 16, 19, 20, 27, 36, 37**

**Other Authorities**

Advisory Committee Notes to Federal Rule of Evidence 902 ........................**19**

## I. INTRODUCTION

Appellees' answering brief fundamentally mischaracterizes both the facts and the law, attempting to reframe this case as one of simple adherence to federal policy by a private business. This narrative crumbles under the weight of evidence proving Appellee Alaska Airlines (hereinafter "Alaska Airlines") was enforcing concurrently both Governor Dunleavy's state mask mandate and President Biden mask mandate at government owned airports, with the assistance of state and local law enforcement; conduct that makes it a state actor regardless of whether the underlying mandate was **state or federal** in origin, when so intertwined with state machinery. (ER 89, 91)

Appellees argue no state action exists, ignoring binding precedent that private entities become state actors, when enforcing state mandates at state/government facilities with state official law enforcement coordination. Alaska Airline's aggressive enforcement in the gate areas they control, makes their enforcement unequivocally state action.

Egregiously, Appellees defend the District Court's unprecedented exclusion of self-authenticating government documents at the pleading stage, an error no federal circuit has upheld, and a clear violation of evidentiary rules that prejudiced Appellant's ability to prove her case.

The District Court committed five distinct reversible legal errors, which Appellees' brief fails to excuse:

1. Excluded self-authenticating government documents essential to Appellant's claims, including Governor Dunleavy's executive policy mandating masks in state facilities. This violated Federal Rule of Evidence (FRE) 902, an error Appellees attempt to justify by incorrectly downplaying their threshold relevance and presumptive authenticity.(ER 12, 18)

2. Erred as a matter of law in determining Alaska Airlines was not a state actor, a conclusion Appellees echo, by minimizing evidence of their joint action with state and local officials enforcing state and federal mask mandates at a state/government owned facility. (ER 17, 19).

3. Violated fundamental motion to dismiss standards by questioning the authenticity of evidence, rather than accepting well-pleaded facts as true, ignoring Appellant's documented compliance wearing a mask as shown in video exhibit X evidence, the Court improperly excluded.

4. Abused its discretion by denying leave to amend after providing detailed guidance for the first time. (ER 14). Appellees defend the decision by mischaracterizing Appellant's efforts to comply with the rules by

overstating missteps to local rules that a *pro se* litigant was very unfamiliar with.

5. Misapplied procedural rules by mischaracterizing Appellant's Rule 46 objection as a civil state Rule 77(k) motion for reconsideration. (ER 5-7; ER 2). The Court denied a reasonable one-week extension to Appellant, for she was out of state, & had just received the dispositive order by mail.

Appellees portray this case as a private airline's independent business decision to enforce a CDC mask policy (that eventually got struck down April 18, 2022). The ban impacted a legislator's ability to travel to the Capital who was forced to travel in -40 life-threatening blizzard conditions, for days, to get to the Capital, endure defamation and ongoing intense infliction of emotional distress.

The evidence excluded by the District Court would prove Alaska Airlines' ban was pretextual, and part of a pattern of dishonest conduct and harassment. Video evidence shows Appellant wore a mask at all relevant times during the events leading to the ban. (video exhibit X-see event description ER 43, ER 58)

The Alaska Airlines employee instrumental in the illegitimate ban, Troy Wuyts-Smith, was subsequently no longer employed by the airline when Appellant attempted service. Critically, no FAA investigation ever occurred—a fact supported by record and directly contradicting Alaska Airlines' demonstrably false public statements to national media including CNN in their April 27, 2021 publication,

11

which maliciously claimed there had been an FAA investigation because Appellant had "refused to wear a mask on their flights." (ER 44, 157, 278-80)

This Court's decision on whether self-authenticating government documents can be summarily excluded at the pleading stage, and whether a private entity enforcing specific government directives at state facilities with state and local police becomes a state actor, will significantly impact future civil rights litigation involving government records and public-private entwinement. (ER 89-91) The egregious nature of banning an elected state official from accessing the state capital on the monopoly airline, based on false premises, further underscores the importance of these questions.

## II. STANDARD OF REVIEW

This Court reviews *de novo* the District Court's dismissal for failure to state a claim. *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011). Clearly, *De novo* review means this Court considers the matter anew, as if no decision had been made previously. Appellees acknowledge this standard.

The determination of whether a private entity is a state actor for purposes of § 1983 liability is a question of law is also reviewed *de novo*. *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 812 (9th Cir. 2010). This legal determination requires careful consideration of the relationship between the private

12

entity and the state, as well as the specific context in which the challenged action occurred.

A District Court's denial of leave to amend is reviewed for abuse of discretion. *Perez v. Mortg. Elec. Registration Sys.*, 959 F.3d 334, 340 (9th Cir. 2020) (citing *A.E. ex rel. Hernandez v. Cty. of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012)). An abuse of discretion occurs if the District Court bases its decision on an erroneous view of the law or clearly erroneous factual findings. "A district court acts within its discretion to deny leave to amend when amendment would be futile, when it would cause undue prejudice to the defendant, or when amendment is sought in bad faith." *Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 725-26 (9th Cir. 2000). However, as Appellees note, "[t]he district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." *Allen v. Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990). The standard used by the Court was particularly strict, where the plaintiff is proceeding *pro se*.

The District Court itself cited *Foman v. Davis*, 371 U.S. 178, 182 (1962), for the factors to consider in a motion for leave to amend, including undue delay, bad faith, repeated failure to cure deficiencies, undue prejudice, or futility. Reinbold was not given deficiency instructions until Feb. 12, 2024, which she strove to cure on April 16, 2024 in her TAC. ER-94-95, ¶¶ 3-7

13

*Pro se* pleadings are held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). This principle reflects the recognition that individuals without legal training should not be penalized for technical deficiencies that do not affect the substance of their claims. The District Court acknowledged it should afford leniency to Appellant as a *pro se* plaintiff.  Appellant contends this standard was not consistently applied and instead held Appellant to an "absurdly high standard." Appellees appear to validate this assertion, by exaggerating some unintentional  (local) rule violations by a pro se litigant, which was a key reason the suit got dismissed by the Magistrate.

The District Court's misinterpretation of Federal Rule of Civil Procedure 46 and its decision to misconstrue Appellant's Rule 46 objections, as a motion for reconsideration, involve legal determination, a de novo standard for review. (ER 6)

## III. THE DISTRICT COURT COMMITTED REVERSIBLE ERROR BY EXCLUDING SELF-AUTHENTICATING GOVERNMENT DOCUMENTS

The District Court's handling of Appellant's exhibits constituted reversible error amounting to a violation of discovery principles *before* discovery could even formally commence. Appellees' contention that the District Court considered these exhibits and found them "unpersuasive" (AAB 26, fn. 10) glosses over the Court's explicit statement "as a preliminary matter, this Court does not take notice of Exs. 2-17" and the Court's improper speculation regarding them (ER 12, 17, 18). This

14

initial refusal to accept the documents at face value, particularly self-authenticating government records unchallenged by Appellees below, tainted any subsequent, cursory review and violated FRE 902 and fundamental motion to dismiss standards. *Man-Seok Choe v. Torres*, 525 F.3d 733 (9th Cir. 2008). This error was a prejudicial, as these documents are essential to proving Appellant's claims.

**A. Appellees Cannot Excuse the District Court's Failure to Accept Presumptively Authentic Government Documents.**

FRE 902 establishes that official government documents like Governor Dunleavy's executive order, documents on government letterhead, federal agency notices, and President Biden's Executive Order are self-authenticating and "require no extrinsic evidence of authenticity in order to be admitted." FRE 902 mandates acceptance of these documents as presumptively authentic, at the pleading stage, without any challenge. The District Court's sua sponte questioning of authenticity, without any objection from Appellees, was reversible legal error.

Appellees' argument that the District Court considered the substance of the exhibits (AAB 26, fn. 10) is irreconcilable with the Court's statement that it did not consider these exhibits as part of the pleadings (ER 12, 18). While the Court may have later referenced some exhibits (ER 17), such references do not cure the initial error of refusing to accept them and improperly questioning their authenticity, with

15

the Court footnoting "the authenticity or relevance of many of these documents may be open to dispute" (ER 12, 17, 18).

Appellees themselves never challenged the authenticity of these documents in the District Court, making the Magistrate's *sua sponte* speculation particularly egregious and underscoring a departure from neutral adjudication. Appellees' assertion that Exhibits 2-17 were "in no way authenticated" (AAB 56) ignores that FRE 902 renders government documents self-authenticating. This Court has reversed cases where a party's lies or egregious conduct taints the proceedings; such a standard should apply here given Appellees' documented falsehoods.

**B. The Disregarded or Improperly Weighed Documents Were Essential to Proving State Action and Other Claims, Rendering Dismissal Improper.**

The District Court's failure to properly consider these essential documents undermines Appellees' argument that amendment was futile (AAB 23-27). If the Court had correctly accepted the presumptive authenticity of these documents and drawn all reasonable inferences in Appellant's favor, the viability of Appellant's claims, particularly regarding state action and Appellees' pattern of misrepresentation and harassment, would be apparent. The excluded documents included:

- **Governor Dunleavy's Executive Order** evidencing enforcement of a state mandate—Appellees' argument that the Court found this "unpersuasive" (AAB 26, fn. 10) ignores the Court's assessment which was tainted by its prior statement disavowing consideration of the exhibits (ER 12, 17)

- **President Biden's Executive Order and Federal Mandates** demonstrating Alaska Airlines was concurrently enforcing both federal and state mask mandates at government-owned airports, making it a state actor regardless of whether the underlying mandate was state or federal in origin when so intertwined with state machinery

- **Coordination Videos** showing direct evidence of joint action and Appellant's compliance, essential under *Dennis v. Sparks* (ER 12, 18, 89, 91)

- **Federal Accommodation Requirements & Medical Exemption Documentation** demonstrating Alaska Airlines' "no exemptions" policy (AAB 56) violated both federal and state mandates which allowed exemptions, and shows Appellant possessed a valid exemption (ER 177) which Alaska Airlines repeatedly denied. Appellees' argument that Appellant never showed her exemption (AAB 22) is a factual dispute contradicted by Appellant's allegations that she repeatedly offered but was told "no exemptions" were allowed (ER 101-4, 137, 144-5, SER 154, 159, 172, 174)

- **FAA Investigation Records** showing no FAA investigation ever occurred—the Alaska FAA legal office confirmed that there never was an investigation—directly contradicting Alaska Airlines' demonstrably false public statements to national media including CNN in their April 27, 2021 publication, which maliciously claimed there was an investigation underway because Appellant had "refused to wear a mask on their flights" (ER 44, 157, 278-80). These records are key to the defamation claim and demonstrate a clear instance of Appellees' dishonesty.

Appellees' assertion that these exhibits were of "marginal if any relevance" (AAB 56) reflects their attempt to downplay critical evidence. Without proper consideration of this evidence, Appellant cannot fairly establish the necessary elements of her claims, directly refuting Appellees' futility argument.

## C. The Magistrate's *Sua Sponte* Speculation About Authenticity at the Pleading Stage Was Clear Error.

The Magistrate Judge's speculation that "the authenticity or relevance of many of these documents may be open to dispute" was plain error (ER 18). A court cannot simultaneously refuse to consider exhibits for pleading purposes, cast doubt on their authenticity without any challenge from the opposing party, and then claim to have meaningfully assessed their substance (AAB 26, fn. 10). This approach converted the motion to dismiss into a summary judgment proceeding without

18

requisite notice or opportunity for Appellant to respond, and without Appellant ever having the benefit of discovery.

## D. No Federal Circuit Has Upheld Such Treatment of Unchallenged Self-Authenticating Documents at the Pleading Stage.

Appellees have failed to cite, and Appellant's research has found, no federal appellate decision upholding a District Court's *sua sponte* questioning of authenticity and refusal to consider unchallenged FRE 902 self-authenticating government documents at the motion to dismiss stage (ER 12, 18). This treatment violates established principles of notice pleading and liberal construction for *pro se* litigants.

## E. The Advisory Committee Notes Support Appellant's Position on Self-Authentication.

The Advisory Committee Notes to FRE 902 emphasize that self-authenticating documents are presumptively authentic because "practical considerations reduce the possibility of unauthenticity to a very small dimension." The rule exists precisely to avoid the situation here—where a court questions the authenticity of official government documents without any challenge from the opposing party.

The District Court's exclusion of self-authenticating government documents gutted Appellant's ability to prove state action under § 1983. Without considering

evidence of Governor Dunleavy's mask order, federal mandates, police coordination videos, and proof of Alaska Airlines' false statements to media, Appellant was denied the ability establish the essential elements of her constitutional claims. This wholesale evidentiary exclusion at the pleading stage denied Appellant fundamental due process. Such unprecedented treatment of FRE 902 documents demands reversal.

## IV.    THE DISTRICT COURT ERRED AS A MATTER OF LAW IN DETERMINING ALASKA AIRLINES WAS NOT A STATE ACTOR

The District Court's conclusion that Alaska Airlines was not a state actor under 42 U.S.C. § 1983 was a clear legal error. The record shows Alaska Airlines enforced both federal and Dunleavy's state mask mandates ER193 at state-owned Ted Stevens International Airport and municipally owned Juneau Airport. Enforcement of either mandate, through state mechanisms, constitutes state action under controlling Supreme Court and Ninth Circuit precedent. The evidence satisfies the joint action, nexus/entwinement, and Brentwood Academy tests for state action.

### A. Alaska Airlines Was a Willful Participant in Joint Action with State Officials

Under *Dennis v. Sparks*, 449 U.S. 24, 27 (1980), private parties are state actors when they are "willful participant[s] in joint action with the State or its

agents." Appellees' attempt to characterize Alaska Airlines' conduct as merely enforcing federal policies applicable to all airlines (AAB 40-41) and their reliance on cases holding that general business enforcement of state mask mandates does not create state action (*Bacon*, AAB 42; *Kiss*, AAB 42) miss the critical distinguishing facts of this case as Appellees grasp at straws with such inapplicable precedent.

The surveillance footage obtained from the Juneau airport director proves Alaska Airlines employees were state actors, through their joint action with law enforcement, while enforcing government mask mandates in the gate area. The 9th Circuit granted video exhibit E & X from the Juneau police department surveillance cameras. The 9th circuit recently granted the Appellee's Motion to Transfer Evidence.

• **Exhibit E**: 9 minutes 18 seconds (TSA area through boarding) depicting multiple coordinated interactions between Alaska Airlines staff and law enforcement

• **Exhibit X**: 22 minutes 59 seconds (arrival at airport through boarding) with zoomed in footage for better visibility, featuring highlights with audio explanation showing state action coordination between Troy and/or Alison and law enforcement.

Both videos show two types of timestamps: the exhibit's elapsed time and the actual surveillance time from the video cameras' clock.

The evidence proves state action through this documented sequence:

**First confrontation by Alaska Airlines supervisor Alison Reineccius (surveillance 13:56:54-13:57:07)**

- Exhibit E: 00:02:22–00:02:34
- Exhibit X: 00:10:16–00:10:26 (zoomed detail)
- Alaska Airlines supervisor Alison confronts and aggressively singles out Senator Reinbold ensuring 100% mask compliance
- She asks if Reinbold is going to "be trouble on the plane"

**Alaska Air employee Troy Michael Wuyts-Smith summons law enforcement (surveillance camera time stamp 14:00:51-14:01:42)**

- Exhibit E: 00:06:11–00:07:07 (law enforcement approaches)
- Exhibit X: 00:19:52–00:20:48 (shows coordination)
- Troy summons TSA supervisor Amanda and Juneau Police Officer Phelps to enforce the mask mandates

**The threat to cancel ticket as Senator Reinbold rushes to board (surveillance camera time stamp 14:00:51-14:02:28)**

- Exhibit E: at 00:07:15–00:07:53
- Troy threatens: **"I will cancel your ticket if you do not put a mask on"**
- TSA & Juneau Police/Law enforcement stands ready to enforce

**Synchronized audio from Senator Reinbold's phone with Ak Air threat**

- Exhibit E begins at 00:06:20 (surveillance 14:01:00)
- Exhibit X begins at 00:22:59 (surveillance 14:01:00)
- Captures Troy's threat and the coordinated interactions
- **Critical fact: Both videos show Appellant's clear mask-wearing throughout the encounter**

22

This direct coordination and enforcement at state and municipal airports satisfies the joint action test under ***Dennis v. Sparks***. TSA officers, police, and Alaska Airlines staff jointly confronted Appellant. When private actors summon federal and local law enforcement who then stand ready while threat(s) are made, Alaska Airlines becomes a "willful participant in joint action with the State." The pretextual nature—threatening someone already wearing a mask—combined with documented law enforcement coordination establishes the state action required for § 1983 liability.

These allegations and supporting evidence, if properly considered, demonstrate more than "mere[] private conduct, no matter how discriminatory or wrongful." AAB 40 (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*). They depict Alaska Airlines acting in concert with law enforcement, targeting and publicly humiliating Appellant ultimately banning her without legitimate basis, as Appellant never received any standard warning nor a "yellow card" per Alaska Airlines policy for her conduct on any flights on Alaska Airlines. The flight on April 22, 2021 was peaceful. Discovery is necessary why Appellant Reinbold was banned.

The Supreme Court has consistently held that private parties can be state actors when performing public functions or acting in concert with state officials. *West v. Atkins*, 487 U.S. 42, 50 (1988) (private physician under contract with state acts under color of state law); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152

(1970) (private party conspiring with state officials); *United States v. Price*, 383 U.S. 787, 794 (1966) (private parties acting under color of law).

B. **Enforcement of Federal/ State Mandates on Government/State-Owned Property Establishes Nexus and Entwinement**

Alaska Airlines enforced mask mandates at the state-owned Ted Stevens International Airport and municipally owned Juneau Airport. The "close nexus" test (*Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)) and "pervasive entwinement" test (*Brentwood Academy v Tennessee Secondary School Athletic Ass'n*, 531 U.S. 288, 296 (2001)) hold that pervasive entwinement between private entities and the state, can transform private conduct into state action. Both tests are satisfied here for Alaska Airlines' conduct is fairly attributable to the state through:

- **Physical Integration**: Operating at state-owned and municipal airports where it controls gate areas

- **Functional Integration**: Monopoly carrier status controlling access to the state capital—making it an instrumentality of the state

- **Financial Integration**: Receipt of nearly $1 billion in coronavirus bailout (King 5 News, April 15, 2020) and ongoing federal subsidies

- **Enforcement Integration**: The state airport director confirmed law enforcement engages with mask enforcement (ER 89, 91) The "close nexus"

24

or entwinement test requires that private conduct be fairly attributable to the state. *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 725 (1961).

Courts have consistently held that such funding and financial dependency are relevant factors in determining whether private conduct is fairly attributable to the state. The Ninth Circuit in *Tsao* recognized that private actors who coordinate closely with state officials in enforcement actions are state actors under § 1983.

Under *Brentwood Academy* and *Lugar*, receipt of substantial government funding and operation on state property further demonstrate pervasive entwinement sufficient to establish state action. *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1140 (9th Cir. 2012)

Conclusion: When a monopoly carrier that receives public funding, enforced government mandates in government facilities, with assistance from law enforcement, they cannot escape accountability, for all the tests for state action are satisfied under § 1983. Enforcement of either state/federal mandate through the state mechanisms, constitutes state action, under controlling Supreme Court and Ninth Circuit precedent. The District Court's contrary conclusion ignored critical evidence and binding precedent, warranting reversal.

## V. THE DISTRICT COURT VIOLATED FUNDAMENTAL MOTION TO DISMISS STANDARDS

Appellees contend that the District Court evaluated Appellant's claims with "all appropriate deference and liberality" (AAB 34). The record demonstrates a systematic failure by the District Court to adhere to the fundamental standards governing motions to dismiss. These errors were not mere technicalities but were outcome-determinative, and Appellees' attempts to justify them (see AAB 26, fn. 10; AAB 56) are without merit.

The Ninth Circuit has made clear that at the motion to dismiss stage, courts must accept all well-pleaded factual allegations as true, and draw all reasonable inferences in the plaintiff's favor, without weighing evidence or making credibility determinations. See *Daniels-Hall v. National Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010) ("At the motion to dismiss stage, courts are not permitted to weigh the evidence or assess the credibility of witnesses."). Here, the District Court improperly questioned the authenticity of Appellant's video evidence and made adverse credibility findings, contrary to these standards. The Court should have accepted Appellant's well-pleaded facts and reasonable inferences, including the video evidence showing mask compliance, which fatally undermines the dismissal.

### A. The Court Failed to Accept Well-Pleaded Facts and Supporting Exhibits as True, Contrary to Appellees' Assertions.

The Supreme Court in *Ashcroft v. Iqbal* mandates that courts "accept all factual allegations in the complaint as true." 556 U.S. 662, 678 (2009). The Supreme Court in *Bell Atlantic Corp. v. Twombly* and *Ashcroft v. Iqbal* established

26

that while courts must "accept all factual allegations in the complaint as true," they must also determine whether the allegations "plausibly give rise to an entitlement to relief." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This plausibility standard cannot be met by excluding crucial evidence at the pleading stage. When a court refuses to consider self-authenticating government documents and supporting video evidence, as occurred here, it improperly prevents a plaintiff from meeting the *Twombly*/*Iqbal* standard by artificially limiting the factual foundation upon which plausibility must be assessed. Appellees' suggestion that the District Court properly handled Appellant's exhibits (AAB 26, fn. 10; AAB 56) ignores clear violations of this standard:

- Improperly Questioning Document Authenticity: Appellees defend the Court's handling of exhibits (AAB 26, fn. 10), yet the Magistrate explicitly stated "As a preliminary matter, this Court does not take notice of Exs. 2-17 for the purpose of determining whether further amendment would be futile." (ER 17) and that their "authenticity or relevance... may be open to dispute." (ER 12, 18). This *sua sponte* speculation about the authenticity of government documents, which Appellees themselves never challenged below and now assert were "in no way authenticated" (AAB 56), directly

violates the requirement to accept well-pleaded facts and presumptively authentic supporting evidence (FRE 902) as true at the pleading stage.

- Ignoring or Discounting Critical Video Evidence: The Magistrate's general refusal to consider exhibits as part of the pleadings necessarily meant a failure to properly consider critical video evidence from Juneau police and airport cameras. This evidence, supporting Appellant's claims of mask compliance and the nature of her interaction with airline staff, was essential.

- The court's state action analysis, for example, fails to engage with the implications of this video evidence exhibit X. (ER 16-20; SER 177-9 paragraph 69-78 describe the confrontational actions by Troy & Alison in the Second Amended Complaint in the boarding area on April 22, 2021).

- Rejecting Factual Allegations of State Mandate Enforcement: The complaint alleged Alaska Airlines enforced Dunleavy's state mandate ER 193 at state facilities. Rather than accepting this as true, the court, as Appellees now implicitly defend by arguing only federal policies were at issue (AAB 40-41), effectively made a contrary factual determination ignoring a genuine issue of disputed fact. State action applies to both federal & state orders. The Magistrate's approach, defended by Appellees, improperly transformed the motion to dismiss into a summary judgment proceeding, by questioning

28

evidence and making factual determinations, without affording Appellant the procedural safeguards set in precedent and in the rules of discovery.

> **B.      The Court Failed to Construe Facts in the Light Most Favorable to Appellant, Despite Appellees' Claim of "Appropriate Deference."**

Beyond accepting facts as true, courts must draw all reasonable inferences in the plaintiff's favor. Appellees' assertion that the court showed "appropriate deference and liberality" (AAB 34) is contradicted by the Magistrate's systematic drawing of adverse inferences:

- State Action Inference: Faced with evidence of Alaska Airlines enforcing a specific federal and/or state executive order at municipal and state facilities with police assistance, the court inferred purely private action, rather than the plausible inference of state action. (ER 16-20).

- Document Validity Inference: Presented with official government documents, the court inferred potential invalidity or irrelevance, rather than the presumptive authenticity and relevance these documents carry at the pleading stage, especially when unchallenged by Appellees below. (ER 12, 18).

- Coordination Inference: Given allegations and proffered video evidence of police coordination, the court implicitly inferred isolated private security

action, rather than joint state-private enforcement, in its ultimate state action conclusion.

Each adverse inference violated the fundamental requirement to construe facts favorably to Appellant. If the court had drawn reasonable inferences, the plausibility of Appellant's claims would have been evident, particularly regarding state action.

### C. The Court Improperly Made Credibility Determinations.

Courts cannot make credibility determinations at the motion to dismiss stage. Appellees' defense of the dismissal overlooks how the Magistrate's opinion repeatedly made improper credibility determinations by questioning the authenticity and relevance of Appellant's evidence, (ER 12, 18) and by framing its discussion of Appellant's interaction regarding her medical exemption ER177 in a way that discounted her version of events. *See, e.g.*, (ER 22 discussing Appellant's objection to provide her written exemption, ER 29, 31, 91, 177). These implicit credibility determinations are particularly inappropriate given Appellant's *pro se* status.

Courts must liberally construe *pro se* filings rather than search for reasons to doubt their veracity or the validity of their supporting evidence. The failure to properly consider the evidence, under the guise of questioning its authenticity or

30

relevance, compounded these errors and directly contradicts the standards

Appellees claim the court upheld. (ER 12, 18).

## VI. THE DISTRICT COURT ABUSED ITS DISCRETION IN DENYING LEAVE TO AMEND

### A. This Was Appellant's First Meaningful Opportunity to Amend After Receiving Specific Guidance from the Court.

Appellees repeatedly emphasize Appellant's prior amendments (AAB 32, 58) to suggest a "repeated failure to cure deficiencies" (AAB 58), but ignore that Appellant did not receive specific deficiency instructions until Judge Kindred's February 12, 2024, 37-page order (ER 129-165). The TAC filed April 16, 2024 (ER 63-124) was Appellant's *first* attempt to address the court's detailed guidance. Federal Rule of Civil Procedure 15(a)(2) mandates that courts "should freely give leave when justice so requires." Denying amendment, after providing specific guidance for the first time, contravenes this principle.

### B. The *Foman* Factors, When Properly Applied to Appellant as a *Pro Se* Litigant, Strongly Support Allowing Amendment.

Appellees invoke *Foman* factors (AAB 28, 58) but misapply them to Appellant's *pro se* status, which requires "less stringent standards" than formal pleadings:

- **No Undue Delay**: The 64-day gap between dismissal and motion (AAB 62) included Appellant's noticed scheduling conflict for *McDow v. Reinbold* trial

March 13-15, 2024 (ER 126). Appellant received instructions on requesting extensions (ER 125). The motion was filed reasonably thereafter.

- **No Bad Faith**: Appellees allege "flagrant failure to adhere to this District's Local Civil Rules" (AAB 33). While the August 22, 2023 Order waived red-lining requirements for *pro se* Appellant (ER 227) but not the rule against incorporation by reference (ER 226), any procedural missteps by a *pro se* litigant unfamiliar with local rules cannot constitute bad faith warranting dismissal. Appellant strove to cure deficiencies identified February 12, 2024 in her April 16, 2024 TAC (ER 94-95, ¶¶ 3-7). The court itself acknowledged it was explaining "shortcomings" and "how Reinbold might try to amend her pleading" (AAB 27, ER 132-133).

- **First Meaningful Opportunity to Cure**: Judge Kindred's February 12, 2024 order provided the first comprehensive deficiency guidance.

- **No Undue Prejudice**: Appellees claim, "mounting litigation costs" (AAB 63, ER 20-21) but never answered the complaint nor participated in discovery.

- **Futility Was Improperly Determined**: The futility finding (ER 18-27) was premature, based on excluding the very evidence that would establish claim plausibility (ER 17).

Appellees' own bad faith—maintaining a "no exemptions" policy contrary to the mandates (ER 218), making false statements to CNN about an FAA investigation that never occurred (ER 211-217)—weighs in favor of allowing amendment.

## C. Ninth Circuit Precedent Requires Liberal Amendment, Especially for *Pro Se* Litigants

The Magistrate's denial of leave to amend after the first constructive feedback from the court, contradicts *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc), and fundamentally denied fairness to a *pro se* litigant.

## VII. THE DISTRICT COURT COMMITTED PROCEDURAL ERRORS REQUIRING REVERSAL

The District Court's substantive errors were compounded by procedural missteps that independently warrant reversal. Appellant's filing was a timely objection under Federal Rule of Civil Procedure 46, which preserves issues for appeal by stating the grounds for objection without requiring the heightened showing necessary for a motion for reconsideration under Rule 77(k). Unlike Rule 77(k) motions, governed by District of Alaska Local Civil Rule 7.3(h)(1), which require showing manifest error or new evidence, Rule 46 objections simply preserve appellate rights.

Despite this, the Magistrate Judge mischaracterized Appellant's Rule 46 objection (ER 6, ER 3, Docket 77) as a Rule 77(k) motion and applied the more stringent reconsideration standard, denying it on that basis (ER 6, ER 2, Docket 78). This procedural error prejudiced Appellant by limiting the scope of review and improperly narrowing appellate preservation. Such mischaracterization is reversible error, especially given Appellant's pro se status and the Ninth Circuit's requirement that pro se litigants receive fair notice and liberal construction of their filings. See *Bateman v. U.S. Postal Service*, 231 F.3d 1220 (9th Cir. 2000); *Jacobsen v. Filler*, 790 F.2d 1362 (9th Cir. 1986). These errors prejudiced Appellant's ability to fairly present her case and preserve her rights.

### A. The Magistrate Judge Improperly Mischaracterized Appellant's Rule 46 Objection as a Motion for Reconsideration, Applying an Incorrect and Prejudicial Standard.

Federal Rule of Civil Procedure 46 provides that '[a] formal exception to a ruling or order is unnecessary' but allows parties to preserve objections for appellate review. Appellant's filing was clearly titled 'Objections to Order' and sought only to preserve the identified legal errors for appeal - precisely what Rule 46 contemplates.

The Magistrate's proceeded to analyze it under the stringent "manifest error" standard applicable to such motions. (ER 6). His recharacterization as a motion for reconsideration under Local Rule 7.3(h)(1) was error because:

(1) **Different Purpose**: Rule 46 objections preserve issues for appeal; reconsideration motions seek to change the court's ruling; (2) **Different Standard**: Rule 46 requires no showing of error; reconsideration requires manifest error or new facts; (3) **Different Timing**: Rule 46 objections may be made after any ruling; reconsideration has strict deadlines.

Appellees contend that construing the submission as a motion for reconsideration "advantaged" Appellant by "overlooking the procedural limitations in terms of a page limit and deadline" (AAB 67). This argument misses the fundamental point: Appellant was not seeking reconsideration under its heightened standard but was preserving her objections as permitted by Rule 46. Forcing Appellant's objections into the narrow framework of reconsideration—requiring her to show "manifest error" or "new facts," (ER 6) applied an incorrect and more burdensome legal standard which was prejudicial by shifting the focus from the merits of the objections to whether they met the extraordinary requirements for reconsideration.

> B.     **The Magistrate Judge Abused Basic Fairness in Denying a *Pro Se* Litigant a Reasonable Extension Under the Circumstances.**

The Magistrate Judge denied Appellant's reasonable request for a one-week extension to respond to the court's November 26, 2024, dismissal order. (ER 11-27). Appellant, proceeding *pro se*, received this dispositive order by mail while out of state, shortly before the court-ordered Joint Status Report was due on December

10, 2024 (referenced by Appellees as SER-10-14) Appellant reiterated her need for more time. Appellees' brief is notably silent on this specific denial.

Appellees had never answered the complaint and could demonstrate no prejudice from a brief delay which violates fundamental fairness principles. This Court should recognize that such procedural inflexibility with *pro se* litigants can unduly hinder their access to justice.

## VIII.  CONCLUSION

Appellees' Answering Brief fails to excuse the multiple, independent legal and procedural errors committed by the District Court. Their arguments are predicated on mischaracterizations of fact and law, and a pattern of demonstrable dishonesty that renders their pleadings untrustworthy. As demonstrated in this Reply Brief and Appellant's Opening Brief, the District Court's unprecedented exclusion of self-authenticating government documents (ER 17); its erroneous determination that Alaska Airlines was not a state actor when enforcing executive orders at government facilities with police coordination (ER 16-20, 89, 91); its misapplication of fundamental motion to dismiss standards (ER 12,18); its abuse of discretion in denying leave to amend after providing specific guidance (ER 11-27); and its prejudicial procedural errors all demand reversal. Appellees' attempts to defend these clear errors are unavailing and do not withstand scrutiny.

For the foregoing reasons, and those set forth in her Opening Brief, Appellant Lora H. Reinbold respectfully requests that this Court:

1. REVERSE the District Court's dismissal & REMAND with instructions to:

   A. Accept all FRE 902 self-authenticating government documents as part of the pleadings. Apply proper state action analysis under *Dennis v. Sparks* & *Burton v. Wilmington Parking Auth*.

   B. Grant Appellant leave to file the Third Amended Complaint.

   C. Apply correct motion to dismiss standards, accepting all well-pleaded factual allegations and supporting exhibits as true and resolving all genuine issues of material fact in Appellant's favor at this stage.

   D. Permit discovery on all claims before any dispositive motions.

2. HOLD that the District Court's *sua sponte* exclusion and questioning of authenticity of unchallenged, self-authenticating government documents at the pleading stage violates Federal Rule of Evidence 902 and fundamental motion to dismiss standards.

3. FIND that the District Court erred as a matter of law in determining Alaska Airlines was not a state actor under the circumstances alleged, where it enforced state and federal executive orders at state and municipal owned government facilities in coordination with law enforcement.

4. DIRECT the District Court to apply the correct, liberal standards for *pro se* litigants consistent with *Haines v. Kerner*.

5. AWARD Appellant costs on appeal and all other relief the Court deems just.

The District Court's cumulative errors deprived Appellant of her day in court, and represent a wholesale denial of due process, that cannot stand. This case presents critical questions about the limits of private power over democratic participation, and the procedural protections required when monopolies control essential services. When a sole commercial carrier to a state capital, effectively bans elected officials' ability get to and from the state capital during session, even worse on false narratives, fundamental constitutional and democratic principles are at stake. The Court must intervene. The ban garnished broad national and international attention, causing Appellant to suffer reputational harm and ongoing distress. The ban was extended for a year without cause with no meaningful due process. This Court's decision will establish important precedent for balancing private corporate business authority with guaranteed constitutional rights, based on the rule of law and precedent set by this 9th circuit Court of Appeals, to ensure access to fair and equal justice .

Respectfully submitted,                                    June 12, 2025

/s/ *Lora H. Reinbold*

Lora H. Reinbold
Pro Se Appellant

38

## STATEMENT OF RELATED CASES

Pursuant to Ninth Circuit Rule 28-2.6, Appellant Lora H. Reinbold states that she is not aware of any related cases pending in this Court.

## CERTIFICATE OF COMPLIANCE

I certify that:

This brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) and/or Fed. R. App. P 29 (d) because this brief contains approximately 7,000 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type of style requirements of Fed. R. App. P. 32(a)(6)(7) (B) (iii). This brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

/s/ Lora H. Reinbold
Lora H. Reinbold
Pro Se Appellant
DATED: June 12, 2025

## CERTIFICATE OF SERVICE

I hereby certify that on June 12, 2025, Alaska time, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the pro se upload CM/ECF system as directed by the court.

I certify I am registered in Pacer  but do not believe I am a registered CM/ECF user.  I will email and mail a copy today to the appellee. Appellant will upload the documents to the CM/ECF system as provided for pro se litigants.

*/s/ Lora H. Reinbold*

Lora H. Reinbold
Pro Se Appellant
DATED: June 12, 2025